**Dallas G. AMOS, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 666–81C.**

United States Claims Court.

Oct. 14, 1987.

Peter B. Broida, Washington, D.C., for plaintiffs.

Stuart James, Dept. of Justice, Washington, D.C., for defendant.

## OPINION

ROBINSON, Judge.

### Introduction

This case is pending before the Court on briefs of the parties after a bifurcated trial of the issue of liability. By agreement of the parties this case is to be decided on the record presently before the Court. *See,* Order of Chief Judge Loren A. Smith, August 24, 1987.

This case involves an action by eleven plaintiffs who were employed as "cook foremen" at the Federal Correctional Insti-tutions at Petersburg, Virginia, and at Big Spring, Texas, to secure payment of overtime compensation allegedly due each of them pursuant to Section 7(a) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a) or, alternatively, the Federal Employees' Pay Act ("FEPA"), 5 U.S.C. §§ 5544, 5550.

At issue is whether or not the plaintiffs were properly classified as "exempt" employees under the cited statutes. Plaintiffs claim that they are "non-exempt" employees for purposes of the FLSA and thus, are entitled to overtime compensation from the government for the Bureau of Prison's failure to allow them a 30–minute duty-free break per shift. If the plaintiffs were in fact "non-exempt" employees, at issue also is whether the time spent on certain activities prior to and after scheduled shifts is compensable. In addition, the Court must decide whether the plaintiffs may recover liquidated damages if the government is liable, and whether the plaintiffs are entitled to compensation under the Federal Employees' Pay Act.

For the reasons discussed herein, the Court finds that the Government is liable to each of the plaintiffs. However, plaintiffs may not recover on their liquidated damages and FEPA claims. The amount of damages to be assessed in favor of each plaintiff is to be determined based upon a subsequent trial which will be held pursuant to an order of this Court issued after a pre-trial conference to be held in the near future.

### Factual Background

The plaintiffs are responsible for supervising inmate food service workers during the preparation of daily meals at the Federal Correctional Institution ("FCI") at Petersburg, Virginia, and Big Spring, Texas. Food service is generally divided into groups for purposes of baking, preparing meals, serving and cleaning up the kitchen and dining room areas. A cook foreman is assigned to each of these groups for different shifts during the day.

Inmate food service workers are assigned to the various work groups for different shifts in food services. The cook foreman in charge of each group has responsibility for delegating different work tasks to the inmate food service workers assigned to his group or area. Cook foremen can recommend the inmates be shifted from one group to another.

Cook foremen are responsible for demonstrating the operation of equipment to inmate food service workers and training inmates to perform various tasks within their group. Some kitchen equipment used for preparing meals is generally not complicated or difficult and some inmates can be taught how to operate it after being shown by the foreman two or three times.

Cook foremen are responsible for recording the daily and monthly hours of inmate food service workers assigned to their respective groups. Prior to 1983, cook foremen had a set monthly allowance for the salaries of the inmate food service workers, from which they budgeted the number of men and the hours they worked in the group. Any funds left over each month were recommended by the cook foremen as inmate food service worker incentive awards for workers who had performed an outstanding job. Now, inmate food service workers have four pay grades or pay levels they can receive. Cook foremen make the determination, based upon certain guidelines each cook foreman makes in conjunction with his superior, the food service administrator, regarding when an inmate moves into another or higher grade. The pay grade level an inmate food service worker receives is initially up to the cook foreman's discretion.

Cook foremen usually complete monthly job evaluation ratings and, occasionally, progress reports for inmates sent to them by counselors. They can report uncooperative behavior or rule infractions by inmates.

Food service administrators have only indirect responsibility for the inmate food service workers. Cook foremen generally supervise more than three inmate food service workers throughout their daily tour of

duty. Indeed, they may have as few as five or as many as thirty inmates assigned to a group. Such inmate food service workers historically have been classified as employees for determining the exempt status of a cook foreman under the Fair Labor Standards Act. The contentions for this exempt status have been the duties of a cook foreman are supervisory, the foremen perform significant personnel management, their manual labor constitutes only a small percentage of their overall duties (including demonstrating tasks to inmates), the foremen regularly exercise discretion and independent judgment in allocation of duties and in preparation and service of food items, and they are free to take breaks at their discretion during slow periods or after completion of meal preparations and prior to service of meals.

Defendant contends that plaintiffs are exempt from the overtime provisions of the FLSA. Alternatively, defendant argues plaintiffs were directed to take lunch breaks at their discretion, have never been required to report for work early or before their tour of duty commenced, have never been directed to work an eight and one-half hour day without taking a lunch break, and plaintiffs have taken lunch breaks on a "regular basis." Defendant further contends the Bureau of Prisons has not knowingly allowed plaintiffs to work an eight and one-half hour day without taking a lunch break.

Plaintiffs contend that they are not exempt from the overtime provisions of the FLSA and that their breaks were infrequent, often interrupted when taken, and not duty free because of the constant requirement that they watch inmates, and be available to respond to telephone calls, complete paperwork, and assist and direct inmates during the working day.

At the FCIs at Petersburg and Big Spring, plaintiffs must report to a control center (and reverse the process) each day to pick up keys, a radio, and a body alarm, check into the institution, walk to their posts and be there at the start, and not leave before the end of their shift, which plaintiffs contend results in additional un-

compensated time for regularly scheduled duties. It is uncontested that some of this pre- or post-shift work was necessary to plaintiffs' work as cook foremen. The essential dispute regarding this preparatory activity is whether any portion of this activity is excluded from compensable time under 29 U.S.C. § 254 and the applicable administrative regulations, if the plaintiffs are non-exempt.

### Discussion

Under the FLSA, which became applicable to federal employees on May 1, 1974, "overtime" payment is required for work by non-exempt employees in excess of 40 hours per work week. 29 U.S.C. § 207. Suit may be brought in this Court to recover unpaid overtime compensation. 29 U.S.C. §§ 204, 216. *Beebe v. United States*, 226 Ct.Cl. 308, 640 F.2d 1283, 1285 (1981); *See, Qualls v. United States*, 230 Ct.Cl. 534, 678 F.2d 190 (1982). Plaintiffs' case, therefore, rests entirely upon whether or not they were improperly classified as exempt employees under FLSA by the Government. The Court finds that they were improperly classified for the reasons hereinafter stated.

■ The exemption status, which must be proven by the defendant, *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 209, 86 S.Ct. 737, 749, 15 L.Ed.2d 694 (1966), requires a clear affirmative showing that an employee is within the scope of the claimed exemption. *Reeves v. International Telephone & Telegraph*, 357 F.Supp. 295, 298 (W.D.La.1973), aff'd, 616 F.2d 1342 (5th Cir.1980). The burden applies to each element of the excepting status claimed. *Walling v. General Industries, Inc.*, 330 U.S. 545, 547–48, 67 S.Ct. 883, 884, 91 L.Ed. 1088 (1947).

The Office of Personnel Management (OPM) (formerly the Civil Service Commission) has been empowered to interpret the FLSA in the federal sector. Under 5 C.F.R. § 551.203 (prior to October 1983) an executive (exempt) employee must be a supervisor, foreman or manager who supervises at least three subordinate employees and who meets each of six listed criteria. The criteria are:

1. The employee's primary duty consists of management or supervision.
2. The workers supervised constitute a recognized organizational unit.
3. The employee regularly exercises discretion and independent judgment under only general supervision, in planning, directing and controlling the work of the unit supervised.
4. The employee performs significant personnel management duties.
5. The employee ... fully meets or exceeds the "Foreman range of responsibility" defined in the job grading standard for Wage Supervisors, if under the Federal Wage System or equivalent prevailing rate systems.
6. In addition to the primary duty criterion that applies to all employees, Foreman level supervisors in the Federal Wage System ... must spend 80 per cent or more of their work-time in a representative work week on supervisory and closely related work. 5 CFR § 551.203(a).

■ The threshold requirement of these regulations is that before executive exemption status may be claimed, the cook foremen must supervise "employees." Under the regulation an employee is one who is employed in an executive agency; as a civilian in a military department; in a nonappropriated fund instrumentality of an executive agency or a military department; or in a unit of the legislative or judicial branch of the government. 5 CFR § 551.102(d)(1981). Employ means to "engage a person in an activity that is for the benefit of an agency, as defined for this part." 5 CFR § 551.102(c). Clearly, the inmates provide a service to the government and are paid a minimal amount. Yet inmates are technically and realistically not employees. "Economic reality is the test of employment as bearing on the applicability of the FLSA." *Souder v. Brennan*, 367 F.Supp. 808 (D.D.C.1973). The economic reality is that inmates are convicted criminals incarcerated in a penitentiary. *Sims v. Parke Davis & Co.*, 334 F.Supp. 774, 787

(E.D.Mich.1971), *aff'd*, 453 F.2d 1259 (6th Cir.1971), *cert. denied*, 405 U.S. 978, 92 S.Ct. 1196, 31 L.Ed.2d 254 (1972). They are not civil servants. Inmates are not free to set their wages through negotiation or bargaining; they may not form unions or strike; and they may not quit work. Their service in vocational programs and their right to compensation is solely by legislative grace, primarily for their own benefit and rehabilitation. *Sprouse v. Federal Prison Industries, Inc.*, 480 F.2d 1 (5th Cir.1973), *cert. denied*, 414 U.S. 1095, 94 S.Ct. 728, 38 L.Ed.2d 553 (1973). They are not employed within the meaning of the regulation; thus, they are not employees.

In addition, many cases hold that inmates are not prison employees and cannot benefit from the provisions of the FLSA. *Alexander v. Sara, Inc.*, 505 F.Supp. 1080 (M.D.La.1981), *vacated*, 666 F.2d 590 (1981), *on remand*, 559 F.Supp. 42 (M.D. La.1983), *aff'd*, 721 F.2d 149 (1983); *Emory v. U.S.*, 2 Cl.Ct. 579 (1983). It would be inconsistent in view of these precedents for this Court to find that inmates are employees under the FLSA for the sole purpose of classifying the cook foremen as exempt from the overtime provisions of the FLSA.

The Court is unpersuaded by the government's argument that since inmates can be considered as employees under U.S. Civil Service Commission Job Grading Standards for Supervisors, inmates must be employees under 5 CFR § 551.203 (1981). The job grading system employs a different set of factors, including difficulty and responsibility, than does the system for exempting employees from the benefits of the FLSA. For example, the evidence shows that at times the cook foremen's duties involve a high level of difficulty, authority and responsibility. The cook foremen must keep order, prevent physical injury to inmates, enforce safety rules and act as guards of the inmates. The Court would expect these factors to be integral to a grade determination. On the other hand, these factors would play a lesser role in determining the exempt status of the cook foremen.

Furthermore, 5 CFR § 551.202(a) states that exemption criteria shall be narrowly construed. The determination of the exempt status of any employee is a highly significant one because if exempt status is denied the employee loses all overtime benefits of the FLSA. It would be an excessively broad construction of the spirit of the FLSA for this Court to find that inmates are employees under the FLSA for the one extremely limited purpose of determining the exemption status of the cook foremen involved here. Rather, the Court finds that the government has not met its burden in establishing that the inmates are properly classified as "employees." For this reason alone, the cook foremen must be determined to be non-exempt.

Assuming, for purposes of discussion only, that the Court's foregoing finding with respect to the status of the inmates is in error, the defendant still must show that the inmates meet six additional criteria, as set forth above, in order to be classed as exempt. The relevant evidence adduced by the parties concerning each of these criteria is in direct conflict. The following discussion will concern each of these criteria.

1. *The employee's primary duty consists of management or supervision.* The defendant has shown convincingly that cook foremen, during most of their work periods, were not scrubbing pots, chopping vegetables, washing dishes, serving food, or cleaning windows. These types of manual chores were sometimes required, but only to keep the preparation and serving of meals on schedule. Their tasks in acting as guards, clearing security, training of inmates, maintaining control, keeping of keys, unlocking and locking of doors, writing of reports, and directing the entire food operation for the benefit of all inmates were unquestionably important and imply a relatively high level of skill and trust. In short, the cook foremen in the main are more than mere working foremen. The Court finds that defendant has met its burden of showing compliance with this criterion.

2. *The workers supervised constitute a recognized organizational unit.* The in-

mates were assigned to the food service function which had a separate and distinct pay category and duties differing from other inmate job categories in the prison system. Their classification was "inmate food service worker." They were trained to perform prescribed standards and operated as such. Their hours were regularly assigned. Some inmates stayed in their food service assignments for relatively long periods extending to six months or more. The unit was, operationally, a cohesive unit dedicated to perform a specific function; i.e., food preparation and service. The Court finds that the defendant has met its burden of showing compliance with this criterion.

3. *The workers regularly exercise discretion and independent judgment, under only general supervision, in planning, directing, and controlling the work of the unit supervised.* Cook foremen determine which inmates must perform the various tasks, they train them to these tasks, they direct and supervise the actual performance of these tasks, they observe breaches of rules and report these breaches, they determine inmate pay within the allowed categories, they have the power to award bonuses for deserving inmates, and their supervision by the Administrators is more general than specific in nature. Although the evidence regarding this criterion is more conflicting than that regarding other criteria, the Court finds that defendant, on balance, has met its burden of showing compliance with this criterion.

4. *The workers perform significant personnel management duties.* The plaintiffs argue that since inmates are not "employees," cook foremen do not perform personnel management duties. While the Court has found that inmates are not employees as defined by FLSA, the Court nevertheless believes that the cook foremen exercise great amounts of human-resource management skills over the inmate groups assigned to them. Cook foremen have at least four highly important and essential management duties. They train new inmate food service workers, they direct their performance in each job, they rate that performance, and they report

breaches and recommend disciplinary action for such breaches. While the cook foremen do not have the power to interview and reject an inmate initially, if an inmate, once assigned, requires reassignment, cook foremen through their supervisors and the disciplinary process presumably can obtain removal of an inmate from food service. In summary, cook foremen are in control of and manage the affairs of the inmate food service workers assigned to their shifts. The Court finds that defendant has met its burden of showing compliance with this criterion.

5. *The cook foremen fully meet or exceed the "Foreman range of responsibility" defined in the job grading standard for Wage Supervisors, if under the Federal Wage System or equivalent prevailing rate system.* Again, the evidence on this point is in direct conflict. The evidence shows the following: (i) inmates are non-supervisory; (ii) the cook foremen are accountable to the Administrator for the quantity and quality of the work done; (iii) they ensure the efficient accomplishment of work assignments within general work schedules set by the Administrator; (iv) within general instructions, they assign inmates to various tasks as required considering skills and numbers of inmates available; (v) they motivate workers; (vi) they explain work requirements, methods and procedures as needed; (vii) they instruct on difficult work; (viii) they revise work while in progress; (ix) they ensure that material (from storage) is delivered to work sites; and (x) they make appraisals of the work of the inmates. However, cook foremen do not: (i) plan work schedules, (ii) set deadlines, (iii) have discretion to change meal times or serving schedules, (iv) select inmates, (v) set standards for quality and quantity, (vi) order equipment and material, (vii) control cost reduction or impose quality assurance programs, or (viii) directly reassign inmates. On balance, the Court finds that the defendant has not met its burden of showing compliance with this criterion.

6. *The cook foremen ... must spend 80 per cent or more of their work time in*

a *representative work week on supervisory and closely related work.* The evidence regarding this last criteria is more in conflict than it is with respect to any other criteria. The plaintiffs are not properly classed as "working foremen" since the evidence is persuasive that *most of their time* is spent in actual supervision of the inmates. However, in view of the persuasiveness of plaintiffs' testimony regarding the actual time each spent in performing inmate functions, the Court finds that more than 20 per cent of their work time each week, *on the average,* is spent in such functions. Thus, defendant has not met its burden of showing compliance with this criterion.

As defendant has failed to prove that plaintiffs meet all six criteria of 5 CFR 551.203(a), plaintiffs must be classified as non-exempt employees. Thus, plaintiffs are covered by the overtime provisions of the FLSA.

### Claims Involving Pre– and Post–Shift Activities

 While plaintiffs did not raise the issue in their complaint, they alleged at trial that if they are non-exempt they are entitled to overtime compensation for their pre- and post-shift activities of picking up equipment from the control room and then walking to their work sites. Defendant argues that the Portal-to-Portal Pay Act, 29 U.S.C. §§ 251 et seq., exempts at least a portion of these activities. In addition, defendant contends that the activities which are not exempt under the Portal-to-Portal Pay Act are *de minimis.*

Section 254(a) provides that no employer will be liable under the Fair Labor Standards Act for failing to pay overtime to an employee for:

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. 29 U.S.C. § 254(a)

The interpretative bulletin of the Wage and Hour Administrator defines preliminary and postliminary activities as those which are engaged in before the commencement or completion of the principal activity or activities. 29 CFR § 790.7(b). Principal activities are "all activities which are an integral part of a principal activity." 29 CFR § 790.8(b). If an activity is closely related to and is indispensable to the performance of a principal activity, it is an integral part of the principal activity rather than a preliminary or postliminary activity. 29 CFR § 790.8(c).

The record is well established that the plaintiffs were required each day to pick up keys, a radio, and a body alarm as they passed through the central control room on their way to their duty station. Without the keys, plaintiffs could not perform the food service work. They could not ensure security without radios and body alarms. The activities of picking up these items in and later returning them to the control room, then, are integral to food service work in a Federal Correctional Institution. The time spent in procuring and returning these items is compensable under the FLSA. Defendant concedes to this contention. However, defendant asserts that the time spent by the plaintiffs in walking to and from the food service area is exempt from the FLSA under 29 U.S.C. § 254(a)(1).

Under 29 U.S.C. § 254(a)(1) "walking, riding or traveling" time "to and from the actual place of performance" is not compensable. The "walking, riding, or traveling" to which 29 U.S.C. § 254(a)(1) refers is "that which occurs, whether on or off the employer's premises, in the course of an employee's ordinary daily trips between his home ... and the actual place where he does what he is employed to do." 29 CFR § 790.7(c). Not all "walking, riding or traveling" is exempt from the FLSA though. The regulations state that exempt "walking, riding or traveling"

does not, however, include travel from the place of performance of one principal activity to the place of performance of another, nor does it include travel during the employee's regular working hours. For example, travel by a repairman from one place where he performs repair work to another such place, or travel by a messenger delivering messages, is not the kind of "walking, riding or traveling" described in [§ 254(a)].

Indeed, this Court's predecessor, the Court of Claims, in dicta, considered this regulation to apply to a situation where a guard, in order to comply with directives, rules and regulations relating to preshift and postshift procedures, had to go, prior to the beginning of his scheduled shift, first to his assigned locker where he changed into his uniform, then proceed to a designated control point to obtain a gun, and then walk or ride to an assigned duty post. At the end of the shift, the guard reversed this process. *Baylor v. United States*, 198 Ct.Cl. 331 (1972). And this Court has twice cited *Baylor* with approval in awarding overtime compensation to security guards who had to report to locations other than their duty station to obtain guns. *Whelan Sec. Co., Inc. v. U.S.*, 7 Cl.Ct. 496 (1985); *International Business Investments, Inc. v. U.S.*, 11 Cl.Ct. 588 (1987).

Yet, the regulation also clearly indicates that even if "walking, riding, or traveling" occurs between the performance of an integral part of the principal activity and the performance of the principal activity itself, that walking, riding, or traveling time may not be compensable. In discussing the types of activities which may be preliminary or postliminary, footnote 49 to Section 790 states:

Washing up after work, like the changing of clothes, may in certain situations be so directly related to the specific work the employee is employed to perform that it would be regarded as an integral part of the employee's "principal activity." [citation omitted] *This does not necessarily mean, however, that travel between the washroom or clothes-changing place and the actual place of per-*

*formance of the specific work the employee is employed to perform, would be excluded from the type of travel to which [29 U.S.C. § 254(a)] refers.* (Emphasis added)

Thus, the determination of whether walking, riding, or traveling time is compensable, like the determination of whether an activity is preliminary or postliminary, must turn upon fact. *Carter v. Panama Canal Co.*, 314 F.Supp. 386 (D.D.C.1970), *aff'd*, 463 F.2d 1289 (D.C.Cir.1972), *cert. denied*, 409 U.S. 1012, 93 S.Ct. 441, 34 L.Ed.2d 306 (1972).

The Court is convinced that the facts of this case present a situation in which the "walking, riding, or traveling" time should not be excluded from compensable activities pursuant to 29 U.S.C. § 254(a) and the regulations thereto. Because of the security requirements of the Federal Correctional Institutions involved here, all employees, including the cook foremen, had to go through the central control room in order to reach their duty stations. However, the cook foremen were required to obtain from the control room particular items of equipment absolutely necessary to performance of their duties; namely, the keys, radio, and body alarm. If they did not have to obtain these items in the control room, the time spent passing through the control room and walking to their duty station clearly would not be compensable. Here, however, plaintiffs, once they had the keys and other equipment items in their possession, in effect had reported for duty. It makes no difference how much time they actually spent in the control room. From the moment they had possession of the keys and other equipment items, they had responsibility for and control over their assigned work area. In the Court's view, this fact made *some* amount of time spent in the control room and in walking to and from the work area compensable because it became an integral part of the performance of their duties as cook foremen. Further, the walking time was more than a "preliminary" or "postliminary" activity under the regulations, 29 CFR § 790.7(b), because it was closely related to and indispensable to

the performance of their principal activity. 29 CFR § 790.8(c).

*Baylor, Whelan Security,* and *International Business Investments,* although factually distinguishable from the instant case, in principle support the conclusion reached here. In each of those three cases, the plaintiffs first had to report to a location other than their duty stations in order to obtain weapons, which were items necessary to their function as guards, prior to proceeding to their active duty stations. They were not free to take a route directly to their work places. Similarly, these plaintiffs must first go to the control room to obtain items necessary to performance of their job as cook foremen. Further, the Court finds the Federal Labor Relations Authority cases which plaintiffs cited in support of their position to be persuasive.

Plaintiffs are not necessarily entitled to payment for all of the time they each spent in the control room but only for that amount of time reasonably required, after gaining possession of the keys and other items, to leave the control room and upon completion of the shift to reenter the control room and return these items. In addition, plaintiffs are entitled to payment for that amount of time reasonably required, upon leaving the control room, to walk to and return from the food service area given the actual distances involved over the best routes available to them at these two facilities. To rule otherwise would run the risk of rewarding plaintiffs for lack of diligence in getting and returning the equipment and in walking to and from this work station and conversely, penalizing those of the plaintiffs who may have taken less than a reasonable amount of time in doing these activities.

This compensable time is subject to the application of the *de minimis* doctrine. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1945). The record does not clearly indicate the total amount of time reasonably required in the control room and in walking to and from the food service area. Thus, at trial on damages, plaintiffs will have the burden of establishing that after obtaining the keys and other equipment items, they each reasonably spent more than 10 minutes on the average in performing these activities.

## Statute of Limitations

█ Plaintiffs contend that the governing statute of limitations under the FLSA is three years for their claims rather than the two-year statute of limitations since the determination of their status as exempt was "willful," citing *Nitterright v. Claytor,* 454 F.Supp. 130, 139 (D.D.C.1978); *Kimball v. Goodyear Tire and Rubber Co.,* 504 F.Supp. 544, 549 (E.D.Tex.1980); and *Donovan v. Carls Drug Co., Inc.,* 703 F.2d 650 (2d Cir.1983).

The Court believes that the standard which plaintiffs urge upon the Court is inapplicable to their case. Rather, the Court adopts the test announced in *Hickman v. United States,* 10 Cl.Ct. 550 (1986). After a thorough review of the standards for determining a willful violation under § 255(a) of the FLSA, the *Hickman* Court determined that a limited, "significant uncertainty" standard applies when the government is the employer. The Court reasoned that since the OPM—which administers the FLSA in the federal sector— is part of the employing entity itself, a looser standard would make willfulness under § 255(a) a *per se* rule because no federal government component could take the position that the FLSA was not a consideration. However, the three-year statute of limitations was meant to be remedial rather than *per se.* The Court, therefore, concluded that when the government is the employer, willfulness means "the absence of a significant uncertainty whether the FLSA applies to cover an employee." *Hickman,* 10 Cl.Ct. at 554.

Using this "significant uncertainty" standard, the Court is of the opinion that the government's action in establishing the classification of cook foreman as exempt was not willful. The record is convincing that significant uncertainty existed about the exempt status of these cook foremen. The Bureau of Prisons (BOP) attempted to fairly apply the regulations and guidance

promulgated by OPM which is authorized to administer the Act for federal employees. Its actions were an attempt to improve the standing and compensation of these workers. In fact, the BOP was correct in its application of the criteria in connection with four of the six criteria specified in the regulations. Although the Court has found that, in practice, the sixth criteria has not been met in that more than 20 per cent of the cook foremen's time was spent in non-supervisory work, it is clear that plaintiffs supervisors instructed plaintiffs to take breaks at their discretion, observed plaintiffs taking breaks during the day and, in good faith, believed plaintiffs were taking their breaks as instructed. The fact that a formal ruling or opinion was not sought by the defendant from the CSC or OPM does not necessarily mean that the defendant's actions were willful. Indeed, given the complexity of the issues, there is no guarantee that OPM itself would have resolved the uncertainty any differently than the BOP. Therefore, the Court finds that the two-year statute of limitations should be applied to these claims since under the evidence here presented the violations were not willful within the meaning of the Act as to these plaintiffs.

### Claims for Liquidated Damages

The plaintiffs seek liquidated damages under the Act. This Court's holding that defendant is liable to plaintiffs for any overtime they might have worked does not automatically entitle plaintiffs to liquidated damages. Rather, the defendant can show that its actions were in good faith with "an honest intention to ascertain what the Fair Labor Standards Act requires and to act in accordance with it." *Beebe v. United States,* 226 Ct.Cl. 308, 640 F.2d 1283, 1295 (1981), citing *Addison v. Huron Stevedoring Corp.,* 204 F.2d 88, 93 (2nd Cir.1953), *cert. denied,* 346 U.S. 877, 74 S.Ct. 120, 98 L.Ed. 384 (1953). The Court finds that the plaintiffs are not entitled to liquidated damages under the circumstances here involved. The defendant has persuaded the Court that its classification of cook foreman as exempt was in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon defendant more than a compensatory verdict in this case. Much of the evidence regarding the defendant's compliance with the cook foreman criteria is in direct conflict. Unquestionably, the proper classification of cook foreman is a close question on the facts here presented. The classification of cook foreman as exempt was in error, but it was not intentional error in spite of the fact that there was no specific advance ruling obtained by the defendant in conjunction with the determination of exempt status for cook foremen.

### Claims Under the Federal Employees' Pay Act

The plaintiffs argue as an alternative claim that they are entitled to compensation under § 5544 of the Federal Employees Pay Act (FEPA). In addition, plaintiffs maintain the six-year statute of limitations of FEPA applies to their action. In support of their arguments, plaintiffs contend that since they are wage board employees covered by § 5544, the provision in § 5542 which requires overtime be officially ordered or approved before it will be paid is inapplicable to them. However, the Court of Claims has held that under 5 U.S.C. § 673c, from which § 5544 was derived, a wage board employee may not recover overtime pay unless he can show that the overtime was authorized, approved or induced by proper authority. *Gaines v. United States,* 158 Ct.Cl. 497 (1962), *cert. denied,* 371 U.S. 936, 83 S.Ct. 309, 9 L.Ed.2d 271 (1962). The Court is not persuaded that the mere absence of a regulation mandates payment under § 5544 of overtime which was not officially ordered or approved. Rather, the Court still holds that judgment will not be "given under this type of overtime legislation (relating to federal employees) unless the work or activity which is the basis of the claim has been authorized, approved, ordered, or confirmed by an authority empowered to do so." *Gaines,* 158 Ct.Cl. at 500. Thus, the government has not "confused the law

upon which plaintiffs rely" but has argued the only law and the correct law.

FEPA provides for overtime compensation for "hours of work officially ordered or approved in excess of 40 hours in an administrative work week." 5 U.S.C. § 5542(a). Appropriate action by an official having the authority to order or approve overtime is a condition to recovery of overtime. *Bowling v. United States*, 181 Ct.Cl. 968, 978 (1967).

Although the plaintiffs had to adhere to a schedule calling for eight and one-half hours each day, the plaintiffs were instructed to take a break of 30 minutes each day which they were free to schedule as they saw fit in light of their variable daily duties. The Court is simply not persuaded by the plaintiffs' testimony that they were warned that they should not "rock the boat" about working overtime. The Court is of the opinion that all plaintiffs worked *some* overtime, the actual amount of which will be fixed by the Court with respect to each employee in the subsequent bifurcated proceeding but that such overtime was not knowingly or tacitly allowed by defendant.

The Food Service Administrators' testimony is persuasive that they did not know of overtime being worked by the cook foremen. Although one particular Food Service Administrator, on a particular day may have known that a particular plaintiff worked some amount of overtime, this would be insufficient to show, as to all plaintiffs as a group, that there was general knowledge by all Administrators that it was a common and established practice for cook foremen to work overtime and not take their lunch breaks of 30 minutes as instructed. Such occasional overtime work would be insufficient for plaintiffs to recover under FEPA without proof of some affirmative inducement or written sanction. *Bilello v. United States*, 174 Ct.Cl. 1253, 1257 (1966); *Albright v. United States*, 161 Ct.Cl. 356, 361 (1963).

There is no obligation for such Administrators to affirmatively ensure that all cook foremen were not working overtime and were not taking breaks at least equal to 30 minutes for eight and one-half hour scheduled work periods. Under FEPA there is no requirement that lunch breaks be established or provided at any particular time. *Baker v. United States*, 218 Ct.Cl. 602, 622 (1978); *O'Leary v. United States*, 217 Ct.Cl. 699, 700 (1978). Since plaintiffs were instructed to take their lunch breaks at their discretion and their duties did not entail constant or continuous work, the Court finds that plaintiffs are not entitled to compensation under FEPA. *See, Ayres v. United States*, 186 Ct.Cl. 350, 354–55 (1968). Accordingly, the six-year statute of limitations is inapplicable.

## Conclusions

Plaintiffs are non-exempt employees under FLSA. Thus, defendant is liable to each of the plaintiffs under FLSA for those amounts of overtime reasonably incurred in the control room and in getting to and from the food service area and while in the food service area over the two-year period preceding this action. Plaintiffs may not recover liquidated damages. In addition, plaintiffs may not recover under FEPA because the overtime worked was not officially ordered or approved. The actual amounts of overtime which are subject to compensation and which will be used in computing monetary damages due to each of the plaintiffs will be determined by this Court after a trial of the issue of damages to be scheduled at a pre-trial conference which will be designated by the Court. A determination of an award of an appropriate attorneys fee and costs will be made upon issuance of the final order determining the proper damages due each of the plaintiffs.

IT IS SO ORDERED.