# Whether a Federal Prisoner Worker is an "Employee" Within the Meaning of Certain Federal Statutes

A federal prisoner worker is not an "employee" within the meaning of section 23 of the Toxic Substances Control Act, section 312 of the Clean Air Act Amendments of 1977, or section 3 of the Occupational Safety and Health Act of 1970.

September 19, 1988

MEMORANDUM OPINION FOR THE ACTING ASSISTANT ATTORNEY GENERAL
CRIMINAL DIVISION

This memorandum responds to the July 17, 1987, request of former Assistant Attorney General Weld to Assistant Attorney General Markman that the Federal Legal Council resolve the question of whether a federal inmate who complains about his working conditions is an "employee" within the meaning of section 23 of the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2622, and of section 312 of the Clean Air Act Amendments of 1977 ("CAAA"), 42 U.S.C. § 7622.[1] Subsequently, on August 4, 1987, Assistant Attorney General Markman referred this matter to the Office of Legal Counsel for resolution.[2] Following the referral of this matter to our Office, we were asked by Victor D. Stone, Senior Legal Advisor, Criminal Division, to also address the question of whether a federal inmate is an "employee" within the meaning of section 3 of the Occupational

---

[1] *See* Memorandum for Stephen J. Markman, Assistant Attorney General, Office of Legal Policy, from William F. Weld, Assistant Attorney General, Criminal Division, *Re  Request for Federal Legal Council Resolution in Interagency Jurisdictional Disagreement Between the Bureau of Prisons and the Department of Labor* (July 17, 1987) ("Weld Memo"). This request for a Federal Legal Council opinion was made in light of the Bureau of Prison's disagreement with a ruling by a United States Department of Labor administrative law judge, holding that a federal inmate is an "employee" for purposes of TSCA and the CAAA  *Plumley v  Federal Bureau of Prisons*, No. 86-CAA-6 (Dec. 31, 1986). Subsequently, on July 20, 1987, the Labor Department entered into a settlement agreement with the prisoner whose complaint had given rise to the administrative law judge's ruling. Assistant Attorney General Weld's Memorandum stated that, in light of the then-imminent settlement of the *Plumley* case, "[a] resolution [of this legal issue] by the Federal Legal Council, therefore, is urgently requested before future lawsuits are filed which lead to new discovery demands, fees and costs, attorney time, and serious agency conflict " Weld Memo at 2.

[2] Memorandum for Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, from Stephen J. Markman, Assistant Attorney General, Office of Legal Policy, *Re  Interagency Jurisdictional Disagreement Between the Bureau of Prisons and the Department of Labor* (Aug. 4, 1987). Assistant Attorney General Markman's memorandum stated that "the Federal Legal Council [is not authorized] to resolve legal disputes submitted to the Attorney General . . . . [T]he resolution of interagency disputes is usually within your Office's [the Office of Legal Counsel's] jurisdiction."

Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 652. For the reasons set forth below, we conclude that a federal inmate is not an "employee" within the meaning of these statutory provisions.[3]

## Discussion

Former Assistant Attorney General Weld's original request required that we address the scope of statutory provisions prohibiting employers from discriminating against "whistleblowing" employees who participate in enforcement proceedings brought under TSCA and the Clean Air Act ("CAA"). Because the language of 15 U.S.C. § 2622 and 42 U.S.C. § 7622 is virtually identical, we analyze these two statutes in tandem. After discussing these two statutory provisions, we turn to the meaning of "employer" and "employee" as defined in section 3 of OSHA.

Both the TSCA provision, Pub. L. No. 94–469, § 23, 90 Stat. 2044 (1976) (codified at 15 U.S.C. § 2622), and the CAAA provision, Pub. L. No. 95–95, § 312, 91 Stat. 783 (1977) (codified at 42 U.S.C. § 7622), begin by setting forth identical clauses prohibiting an "employer" from "discharg[ing] . . . or otherwise discriminat[ing]" (with respect to "compensation, terms, conditions, or privileges of employment") against an "employee" who "commence[s]," "testifie[s]," "assist[s]," or "participate[s]" in TSCA and CAA proceedings directed against the employer. 15 U.S.C. § 2622(a); 42 U.S.C. § 7622(a).[4] In order to remedy prohibited discharges or other acts of discrimination, these two statutes authorize "[a]ny employee" to "file . . . a complaint with the Secretary of Labor alleging such discharge or discrimination." 15 U.S.C. § 2622(b)(1); 42 U.S.C. § 7622(b)(1). If the Secretary finds a violation, he is empowered to order the violator "to reinstate the complainant to his former position together with the com-

---

[3] The Environmental Protection Agency concurs in our view that section 23 of TSCA and section 312 of the CAAA do not apply to federal inmates Letter for John O. McGinnis, Deputy Assistant Attorney General, Office of Legal Counsel, from Lawrence J. Jensen, Acting General Counsel, Environmental Protection Agency (Aug. 11, 1988). In a letter to this Office, the Department of Labor expressed no opinion on the merits of the question whether federal inmates are "employees" within the meaning of OSHA, TSCA, and the CAAA. Letter for John O. McGinnis, Deputy Assistant Attorney General, Office of Legal Counsel, from George R. Salem, Solicitor of Labor (Aug. 30, 1988).

[4] 42 U.S.C. § 7622(a) states.

No employer may discharge any employee or otherwise discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to a request of the employee) —

(1) commenced, caused to be commenced, or is about to commence or cause to be commenced a proceeding under this chapter or a proceeding for the administration or enforcement of any requirement imposed under this chapter or under any applicable implementation plan;

(2) testified or is about to testify in any such proceeding; or

(3) assisted or participated or is about to assist or participate in any manner in such a proceeding or in any other action to carry out the purposes of this chapter

15 U.S.C § 2622(a) is m all material respects identical. In the context of section 2622(a), "chapter" refers to chapter 53 of title 15 of the United States Code ("Toxic Substances Control"), 15 U.S C §§ 2601–2629; in the context of § 7622(a), "chapter" refers to chapter 85 of title 42 of the United States Code ("Air Pollution Prevention and Control"), 42 U.S.C. §§ 7401–7642.

pensation (including back pay), terms, conditions, and privileges of his employment," plus compensatory damages. 42 U.S.C. § 7622(b)(2)(B); *see also* 15 U.S.C. § 2622(b)(2)(B) (materially identical provision).[5]

Neither TSCA nor the CAA (including the 1977 CAAA), nor the legislative histories of those statutes, defines the terms "employee" and "employer." Nevertheless, the meaning of these words as they apply to the employer-employee relationship can be drawn implicitly from the requirements set forth in 15 U.S.C. § 2622 ("TSCA provision") and 42 U.S.C. § 7622 ("clean air provision"), summarized above. Both the TSCA provision and the clean air provision seek to prevent an employer from discharging or otherwise discriminating against a "whistleblowing" employee (*i.e.*, an employee who brings the employer's environmental health and safety derelictions to light). In particular, the two provisions prohibit discrimination with respect to "terms, conditions, or privileges of employment." Furthermore, both provisions provide that an employee wrongfully discriminated against shall be reinstated to his former position, subject to the same compensation (including back pay), terms, conditions, and privileges he previously enjoyed. It follows that both the TSCA provision and the clean air provision contemplate "traditional" contractually based employer-employee relationships, in which an employee obtains an agreed-upon compensation and certain privileges by virtue of his employment. In other words, the TSCA and clean air provisions envision an employment relationship in which an "employee" is "[a] person in the service of another *under any contract of hire, express or implied, oral or written*," Black's Law Dictionary 471 (5th ed. 1979) (emphasis added).

Section 3 of OSHA, 29 U.S.C. § 652, sets forth definitions applicable to chapter 15 of title 29 of the United States Code. Section 3(5) defines an "employer" as "a person engaged in a business affecting commerce who has employees, but does not include the United States or any State or political subdivision of a State." Section 3(6) states that an "employee" is "an employee of an employer who is employed in a business of his employer which affects commerce." The latter definition plainly comports with the understanding that an "employee" is "[a] person in the service of another a non-government employer under any contract of hire, express or implied, oral or written." Black's Law Dictionary at 471.

In contrast, federal prisoners clearly are not parties to a contractually based employer-employee relationship as contemplated in TSCA, the CAAA, or OSHA. A federal prisoner is "committed, for such term of imprisonment as the sentencing court may direct, to the custody of the Attorney General of the United States, who shall designate the place of confinement where the sentence shall be served." 18 U.S.C. § 4082(a). Thus, since a federal prisoner is, by definition,

---

[5] An aggrieved employee or employer may obtain review of the Secretary's order in the United States Court of Appeals for the circuit in which the violation of subsection (a) allegedly occurred. 15 U.S.C. § 2622(c); 42 U.S.C. § 7622(c). Under the TSCA provision, the Secretary "*shall*" file a civil action in United States district court whenever a person has failed to comply with a subsection (b)(2) order 15 U S.C § 2622(d) The Secretary "*may*" file such an action under the parallel CAAA provision 42 U S.C. § 7622(d).

*"[o]ne who is deprived of his liberty,"* Black's Law Dictionary at 1075 (emphasis added), he cannot freely enter into a contract of employment. That federal prisoners are legally *incapable* of entering into "any contract of hire" is underscored by the fact that the work they perform involves *involuntary servitude. See Emory v. United States*, 2 Cl. Ct. 579, 580 (rejecting federal prisoner's claim that his being required to work amounts to unconstitutional "slave labor," since "the thirteenth amendment, in abolishing slavery and involuntary servitude, specifically adds the phrase 'except as a punishment for crime whereof the party shall have been duly convicted,' which covers the plaintiff[] [prisoner's] situation"), *aff'd*, 727 F.2d 1119 (Fed. Cir. 1983).

An examination of the terms under which federal prisoners are assigned work reinforces the conclusion that they are not "employees." The work rendered by federal prisoners is controlled by Federal Prison Industries ("FPI"), which *"shall* determine in what manner and to what extent industrial operations shall be carried on" by federal prisoners. 18 U.S.C. § 4122(a) (emphasis added). FPI's "board of directors *shall* provide employment for all physically fit inmates in the United States penal and correctional institutions," in a manner that minimizes competition with private industry. 18 U.S.C. § 4122(b) (emphasis added). The "employment" provided by FPI, however, does not establish a contractual employer-employee relationship between FPI and federal prisoners. As indicated by the language of 18 U.S.C. § 4122, a federal prisoner worker does *not* voluntarily enter into "any contract for hire"; rather, he is *assigned* work by FPI. Thus, in particular contrast to the "employees" covered by TSCA and the clean air provision, and by OSHA, a federal prisoner worker enjoys no "privileges" of employment.[6] Furthermore, unlike a typical employer, who is contractually bound to pay wages, FPI merely *"is authorized [but not required]* to employ" funds under its control "in paying, under rules and regulations promulgated by the Attorney General, compensation to inmates" who are assigned work. 18 U.S.C. § 4126(c) (emphasis added). Payments made by FPI are not a matter of contractual right. Instead, they are rendered "solely by congressional grace and governed by the rules and regulations promulgated by the Attorney General." *Sprouse v. Federal Prison Industries, Inc.*, 480 F.2d 1, 4 (5th Cir.), *cert. denied*, 414 U.S. 1095 (1973). *See also Garza v. Miller*, 688 F.2d 480 (7th Cir. 1982), *cert. denied*, 459 U.S. 1150 (1983) (federal prisoner has no proprietary or protected liberty interest in his job or his compensation).

Since the assignment of work to federal prisoners does not involve the type of employer-employee relationships envisioned in TSCA, the CAAA, and OSHA, we believe it follows logically that the protections those three statutes afford "em-

---

[6] As described above, the TSCA and clean air provisions prohibit discrimination with "regard to terms, conditions, or privileges of employment," and provide for the reinstatement of employees who are discharged due to discrimination, subject to the same "terms, conditions, or privileges." Federal prisoners, however, do not enjoy "privileges" of employment, since they *must* carry out the tasks set for them by FPI and adhere to the conditions specified by FPI. In addition, since federal prisoners are *required* to work (FPI *"shall* provide employment for *all* physically fit inmates"), they are not, of course, subject to discrimination *through discharge*

ployees" should not be deemed to extend to federal prisoners. Consistent with this conclusion, it is apparent that the TSCA and clean air "whistleblower" protections, as well as OSHA's definition of an "employee," logically should *not* be applied to federal prisoner workers.

Consistent with our conclusion that federal prisoners should not be viewed as "employees," Congress enacted a specific statutory provision, 18 U.S.C. § 4126, authorizing compensation for injuries suffered by federal prisoners in federal penitentiaries. In contrast, private-sector employees receive compensation for workplace injuries under state worker's compensation laws, and federal employees are compensated for injuries on the job under the terms of Federal Employees' Compensation Act, 5 U.S.C. §§ 8101–8173.[7] This divergence in statutory treatment suggests that Congress, in providing for the compensation of injured prisoner workers, viewed them as neither private-sector employees nor federal employees.

Our conclusion also draws additional support from judicial and administrative holdings. In the case of OSHA, an Acting Area Director of the Occupational Safety and Health Administration has opined that OSHA's statutory protections do not apply to federal prisoners. In a November 27, 1984, letter to Warden Calvin Edwards of the Federal Correctional Institution at Milan, Michigan, OSHA Acting Area Director Jerry M. Gillooly specifically conceded that OSHA's jurisdiction does not extend to federal prisoners working in the prison's sewage lift station and paint shop:

> Although OSHA exercises jurisdiction in Federal agency safety and health matters, *we do not believe our authority extends to prisoners*, inmates, or other institutionalized persons *as there does not appear to be an employer/employee relationship between the agency and the individual.* We, therefore, defer to your responsibility for the safety and health of inmates in your care.

Gillooly letter at 1 (emphasis added). In short, consistent with our analysis, OSHA has on at least one occasion conceded that federal prisoners do not fall within the ambit of employer-employee relationships covered by OSHA.

While no judicial or administrative decision deals with the applicability of TSCA or the CAA to federal prisoners, determinations bearing on other federal statutes are instructive. For example, the United States Claims Court has held that a federal prisoner is not an "employee" within the meaning of the Fair Labor Standards Act of 1938 and thus is not entitled to receive the minimum wages specified in that Act. *Emory v. United States,* 2 Cl. Ct. 579, *aff'd,* 727 F.2d 1119

---

[7] While certain provisions of 18 U.S.C. § 4126 are patterned after the Federal Employees' Compensation Act, the Supreme Court has recognized that "differing circumstances of prisoners and non-prisoners have led to differences in the way the two statutes protect their beneficiaries." *Berry v. Federal Prison Industries, Inc.,* 440 F. Supp. 1147, 1150 (N.D. Cal 1977) (citing *United States v. Demko,* 385 U.S. 149, 152 (1966)).

(Fed. Cir. 1983).[8] Consistent with that holding, the Claims Court recently ruled, in *Amos v. United States*, 13 Cl. Ct. 442 (1987), that federal prisoners supervised by cook foremen are not "employees" within the meaning of the Fair Labor Standards Act. Citing precedents, the Claims Court's decision, 13 Cl. Ct. at 445–46, contains a good discussion of why federal prisoners who are paid a nominal amount for work performed are not "employees":

> Clearly, the inmates provide a service to the government and are paid a minimal amount. Yet inmates are technically and realistically not employees. "Economic reality is the test of employment as bearing on the applicability of the FLSA." *Souder v. Brennan*, 367 F. Supp. 808 (D.D.C. 1973). The economic reality is that inmates are convicted criminals incarcerated in a penitentiary. *Sims v. Parke Davis & Co.*, 334 F. Supp. 774, 787 (E.D. Mich. 1971), *aff'd*, 453 F.2d 1259 (6th Cir. 1971), *cert. denied*, 405 U.S. 978, 92 S. Ct. 1196, 31 L.Ed. 2d 254 (1972). They are not civil servants. Inmates are not free to set their wages through negotiation or bargaining; they may not form unions or strike; and they may not quit work. Their service in vocational programs and their right to compensation is solely by legislative grace, primarily for their own benefit and rehabilitation. *Sprouse v. Federal Prison Industries, Inc.*, 480 F.2d 1 (5th Cir. 1973), *cert. denied*, 414 U.S. 1095, 94 S. Ct. 728, 38 L.Ed. 2d 553 (1973). They are not employed within the meaning of the federal FLSA regulation; thus, they are not employees.

Administrative determinations dealing with the status of prisoner workers comport with these case-law principles. In a January 4, 1945, letter to the Director of the Bureau of Prisons, the Acting Deputy Commissioner of the Internal Revenue Service opined that the withholding provisions of the Individual Income Tax Act of 1944 were inapplicable to the payments paid to federal prisoner workers. That letter stressed that the "nominal sums" paid federal prisoners for the work they perform "are gratuitous allowances provided by Federal law for the labor required *and are not wages arising out of a relationship of employment* within the meaning of the provisions of the Internal Revenue Code." Letter at 2 (emphasis added).

---

[8] The court in *Emory* cited in support of its holding the case of *Alexander v. Sara, Inc*, 505 F. Supp. 1080 (M.D. La. 1981), *aff'd*, 721 F.2d 149 (5th Cir. 1983), which held that state prisoner inmates who participated in a blood plasma program operated by a private corporation were not "employees" for purposes of the Fair Labor Standards Act, since the ultimate control and regulation of the inmates remained with prison officials. According to the *Emory* court, although "[t]he Alexander case involved state prisoners, . . the same principle is pertinent in a case involving a federal prisoner." 2 Cl. Ct. at 580 n.1. At least four other federal district court decisions have held that prisoners are not "employees" within the meaning of the Fair Labor Standards Act. *Huntley v. Gunn Furniture Co* , 79 F. Supp. 110 (W.D. Mich. 1948); *Hudgins v Hart*, 323 F. Supp. 898 (E.D. La. 1971); *Sims v. Parke Davis & Co* , 334 F. Supp. 774 (E.D. Mich.), *aff'd*, 453 F.2d 1259 (6th Cir. 1971), *cert denied*, 405 U.S. 978 (1972); *Worsley v. Lash*, 421 F. Supp. 556 (N.D. Ind 1976). All of these decisions emphasized that prisoner workers are not parties to an employer-employee relationship.

207

The Treasury Department reaffirmed the non-employee status of federal prison inmates in Rev. Rul. 75–325, 1975–2 C.B. 415. According to that Ruling, "the relationship between the inmates and Federal Prison Industries, Inc., arises from the incarceration of the inmates on one hand and from the legal duty of the Corporation to provide rehabilitative labor on the other. *It is not the legal relationship of employer and employee.*" *Id.* (emphasis added). Summarizing this jurisprudence, the Criminal Division recently opined "that the nominal sums awarded to federal inmates employed in the federal correctional system do not constitute employee wages or other gross income for" income tax withholding purposes, since "*the classic employer-employee relationship does not exist in the federal prison industry setting*, and . . . the nominal sums awarded to working inmates represent[] a gratuitous allowance or rehabilitative incentive payment rather than wages or other earned income." Memorandum for W. Lawrence Wallace, Assistant Attorney General, Justice Management Division, from Stephen S. Trott, Assistant Attorney General, Criminal Division, *Re: IRS Reporting Requirements for Inmates Employed by Federal Prison Industries, Inc.* at 2 (Sept. 2, 1986) (emphasis added).

Taken together, these holdings provide substantial support for the proposition that federal laws affecting "employees" should not (absent specific language covering federal prisoners) be applied to federal prisoner workers, since those workers are not involved in a traditional employer-employee relationship with FPI. Accordingly, strong precedents drawn from other areas of federal law suggest that employee-related provisions of the CAA, TSCA, and OSHA are not applicable to the federal prison setting.

In summary, the TSCA and clean air whistleblower provisions, as well as OSHA's definition of "employee," apply to individuals who are parties to "employer-employee" relationships, as generally understood. In contrast, federal prisoner workers are not parties to contractual employment relationships; rather, they are subject to involuntary servitude. Thus, federal prisoners do not enjoy the rights commonly enjoyed by employees, such as the right to wages. It therefore follows that the TSCA whistleblower provision, the clean air whistleblower provision, and the OSHA definition of "employee," do not apply to federal prisoners.

## Conclusion

For the foregoing reasons, we conclude that a federal inmate is not an "employee" within the meaning of 15 U.S.C. § 2622, 42 U.S.C. § 7622, or 29 U.S.C. § 652.

DOUGLAS W. KMIEC
*Acting Assistant Attorney General*
*Office of Legal Counsel*
