Dallas G. AMOS, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 666–81C.

United States Claims Court.

March 21, 1991.

Peter B. Broida, Arlington, Va., for plaintiffs.

Kathryn A. Bleecker, Washington, D.C., with whom were Asst. Atty. Gen. Stuart M. Gerson, Director David M. Cohen, and Asst. Director Thomas W. Peterson, for defendant.

## OPINION

ROBINSON, Judge:

This case is before the court on defendant's motion to dismiss plaintiffs' complaint for lack of subject matter jurisdic-

tion. Defendant contends that under the Civil Service Reform Act (CSRA), 5 U.S.C. § 7101, *et seq.*, plaintiffs' exclusive method for resolving Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a), compensation claims is through the grievance procedures in their collective bargaining agreements (agreements). Plaintiffs concur with defendant that this court does not have jurisdiction over post-September 14, 1981 claims, covered by agreements executed subsequent to the CSRA, but only with respect to those plaintiffs who still have access to the grievance procedures negotiated by the American Federation of Government Employees (AFGE) (Council of Prison Locals) collective bargaining unit (unit) under which these particular claims accrued. Rather than agree to dismissal of their claims, however, such plaintiffs seek a referral of these claims to the Office of Personnel Management (OPM) for resolution. However, the court has determined that under RUSCC 60.1 and 28 U.S.C. § 1631, it cannot transfer to an administrative forum, but must dismiss, those claims over which it has no jurisdiction. Therefore, this request will be denied.

Plaintiffs allege that this court does have jurisdiction over the post-September 14, 1981 claims of those plaintiffs who, for whatever reason, no longer have access to the AFGE unit's grievance procedures. The court concludes that it has insufficient information to resolve this dispute respecting those plaintiffs, if any, for whom grievance procedures are no longer available. Therefore, at this time the court cannot determine whether it has jurisdiction over their claims. Thus, the court will grant defendant's motion to dismiss the post-September 14, 1981 claims with respect to those plaintiffs who still have access to the AFGE unit's grievance procedures as of the date of this opinion, but will defer its ruling upon defendant's motion to dismiss respecting those plaintiffs who do not. After identification of these latter plaintiffs in

further proceedings, the court will rule upon defendant's motion as to these plaintiffs in a subsequent order.

The principal remaining issue for determination in response to defendant's motion to dismiss is whether this court has jurisdiction over plaintiffs' claims which arose under an agreement that was effective prior to the CSRA. After considering the parties' arguments, the court concludes that under the CSRA's savings provision, 5 U.S.C. § 7135, and Executive Order 11491 (E.O. 11491), the court does have jurisdiction over plaintiffs' claims accruing beginning on November 13, 1979 and extending through September 14, 1981. Accordingly, defendant's motion to dismiss will be denied with respect to these claims.

*Factual Background*

Plaintiffs seek recovery under the FLSA, 29 U.S.C. § 207(a), and the Back Pay Act, 5 U.S.C. § 5596, for wages due plaintiffs for FLSA overtime compensation, interest and attorneys' fees.

Plaintiffs are non-exempt cook foremen for the Bureau of Prison's (BOP's) Petersburg, Virginia and Big Spring, Texas, installations. They supervise and assist inmates in the preparation and serving of food to inmates and employees at these installations. Plaintiffs seek recovery from the BOP for time worked in excess of 8 hours per day, 40 hours per week and for "portal" time, which is time spent picking up and then returning equipment to control booths at the beginning and the end of their shifts.[1]

Plaintiffs filed suit in this case on November 13, 1981 for claims dating back over six years. In *Amos v. United States*, 13 Cl.Ct. 442 (1987), this court determined that under the test announced in *Hickman v. United States*, 10 Cl.Ct. 550 (1986), a two-year statute of limitations applied to plaintiffs, limiting their claims to those arising after November 12, 1979.

**1.** In an earlier opinion, *Amos v. United States*, 13 Cl.Ct. 442 (1987), this court held that the BOP had improperly designated plaintiffs as FLSA exempt as opposed to non-exempt employees. Under the FLSA, overtime pay is required for

work by non-exempt employees exceeding 40 hours per week. The court's prior opinion also determined that plaintiffs' "portal" time was compensable under the FLSA.

Prior to and during the pendency of this suit, plaintiffs have worked under several consecutive agreements that are here relevant. All of these agreements contained grievance procedures which were the exclusive procedures for resolution of disputes within their coverage. These procedures were negotiated in accordance with terms of either E.O. 11491 or the CSRA, whichever was in effect when the agreement was enacted. The first agreement was entered into on June 1, 1978 (June 1978 agreement). It was initially effective through November 30, 1979, but was extended until a successor agreement was enacted on September 15, 1981 (September 1981 agreement).[2]

The June 1978 agreement was subject to E.O. 11491. Section 13, E.O. 11491 provided that:

(a) An agreement between an agency and a labor organization shall provide a procedure, applicable only to the unit, for the consideration of grievances. The coverage and scope of the procedures shall be negotiated by the parties to the agreement with the exception that it *may not cover matters for which a statutory appeal procedure exists . . . .*

(Emphasis added.)

Plaintiffs' subsequent agreements, beginning with the September 1981 agreement, were all negotiated after the effective date, January 11, 1979, of the CSRA. All agreements executed on or after this date were subject to the CSRA and not to earlier orders such as E.O. 11491. The CSRA, as codified in 5 U.S.C. § 7121, provides that:

(a)(1) [A]ny collective bargaining agreement shall provide procedures for the settlement of grievances. . . . [T]he procedures shall be the *exclusive* procedures for resolving grievances which fall within its coverage.[3]

(a)(2) Any collective bargaining agreement may exclude any matter from the

application of the grievance procedures which are provided for in the agreement. (Emphasis added.)

The CSRA also contained the following savings provision, 5 U.S.C. § 7135:

(a) Nothing contained in this chapter shall preclude—

(1) [T]he renewal or continuation of an exclusive recognition, certification of an exclusive representative, or a lawful agreement between an agency and an exclusive representative of its employees; which is entered into before the effective date of this chapter[.]

While the agreements relevant to this proceeding were entered into both prior and subsequent to the CSRA, all of the claims themselves arose after the enactment of the CSRA. The parties now dispute whether plaintiffs' FLSA claims must be pursued through the grievance procedures in the relevant agreements or whether they are cognizable in this court.

*Arguments*

In support of its motion to dismiss for lack of subject matter jurisdiction, defendant argues that in *Carter v. Gibbs*, 909 F.2d 1452 (Fed.Cir.1990), the Court of Appeals for the Federal Circuit (Federal Circuit) established that an agreement's grievance procedures are the exclusive methods for resolving FLSA disputes unless the parties specifically provide otherwise in their agreement. In that case appellants, unionized IRS employees, collectively brought FLSA claims in the United States District Court for the Central District of California to recover overtime pay for work performed since 1981. The district court dismissed the case for lack of subject matter jurisdiction. In a panel decision, the Federal Circuit reversed. *Carter v. Gibbs*, 883 F.2d 1563 (Fed.Cir.1989). After a rehearing *en banc*, the Federal Circuit vacated its earlier opinion and held that employees who were covered by agreements that did

---

**2.** The Federal Labor Relations Authority has consistently held that such agreements will be construed as continuing in effect until a new agreement is executed. *Dept. of Air Force, 35th Combat Support Group, George AFB and NFFE Local 977*, 4 F.L.R.A. 22 (1980); *Dept. of De-*

*fense, Navy Ordnance Station, Louisville and IAM Local 830*, 4 F.L.R.A. 760 (1980).

**3.** There are exceptions to this requirement which are not applicable here.

not exclude overtime pay disputes from their grievance procedures were precluded from pursuing FLSA disputes in a Federal court by virtue of limitations upon access to those courts imposed by the CSRA.

Defendant alleges that since plaintiffs did not exclude pay disputes from the grievance procedures of any of their agreements, *Carter* precludes them from pursuing their claims in this court. It contends that although plaintiffs' pre-September 15, 1981 claims all accrued under the June 1978 agreement, which preceded the CSRA, they also all arose after the CSRA's effective date. Defendant argues that plaintiffs were free to exclude FLSA disputes from all of their negotiated grievance procedures, and that since they did not do so, these claims were subject to the CSRA. Further, defendant argues that since the CSRA abrogated any rights plaintiffs may have had to pursue their claims in Federal courts, this court must dismiss all of plaintiffs' claims. As to the pre-September 15, 1981 claims, defendant alternatively argues that even if these claims were not governed by the CSRA, they were governed by the June 1978 agreement's grievance procedures because FLSA disputes are not subject to "statutory appeal procedures" as defined in Section 13, E.O. 11491. Therefore, defendant alleges these claims are not cognizable in this court.

Plaintiffs acknowledge, and the court agrees, that the post-September 14, 1981 claims are subject exclusively to applicable agreements' grievance procedures for those plaintiffs who still have access to these procedures.[4] However, plaintiffs argue that this court does retain jurisdiction for those plaintiffs who, through separation from the AFGE unit, do not have access to its grievance procedures. They argue that as to these plaintiffs the court should not dismiss their claims. In this regard, plaintiffs have asked the court to

direct defendant to state the employment status that presently exists for each plaintiff since September 15, 1981, or alternatively, to provide plaintiffs the opportunity to obtain that information from defendant through interrogatories or requests for admissions.

Plaintiffs also argue that those claims accruing from November 13, 1979 through September 14, 1981, under the June 1978 agreement are not subject to the CSRA. Instead, plaintiffs allege that these claims fall under E.O. 11491. Further, plaintiffs contend that these claims are subject to "statutory appeal procedures" and, therefore, under Section 13, E.O. 11491, plaintiffs are precluded from resolving these claims under the grievance procedures in their June 1978 agreement. Thus, plaintiffs argue they must pursue these claims either through the relevant statutory appeals procedure or in a court of competent jurisdiction.

In this regard, plaintiffs allege that a statutory appeal procedure to OPM exists for FLSA compensation claims. Plaintiffs cite Federal Personnel Manual System Letter No. 551-9 (FPM-L 551-9), which the Civil Service Commission (CSC) (predecessor to OPM) issued on March 30, 1976. This instructional letter discussed the right of an employee alleging a FLSA violation to file a complaint directly with the CSC, or "under the law itself," to bring an action in a U.S. district court either directly or in that court as an appellate court after receiving an unfavorable CSC decision. While not cited in FPM-L 551-9, the court assumes that the phrase, "under the law itself," refers to 29 U.S.C. § 216, which provides that:

> (b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee.... An action to recover the liability prescribed in either of the preceding sen-

---

4. The effective date for the CSRA was January 11, 1979. Plaintiffs' agreements, with the exception of the June 1978 agreement, were all effective subsequent to this date, the first on September 15, 1981. Plaintiffs did not make any exceptions under 5 U.S.C. § 7121(a)(2) for the resolution of FLSA disputes outside of the grievance

procedures in their September 1981 agreement or in any of their subsequent agreements. Therefore, the claims of these plaintiffs are within the exclusive jurisdiction of those procedures. 5 U.S.C. § 7121(a)(1). *Carter v. Gibbs,* 909 F.2d 1452 (Fed.Cir.1990).

tences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction.... [5]

Plaintiffs argue that the term "statutory appeal procedures" in Section 13, E.O. 11491, which exempts certain disputes from an agreement's grievance procedures, includes the appeal procedures for FLSA claims cited in FPM–L 551–9. They allege that this term encompasses any matter an employee might challenge through a procedure that provides for review by an organization other than the employer, i.e., a third party review. Plaintiffs cite as authority *Veterans Administration, Regional Office, Denver and AFGE Local 1557*, 7 F.L.R.A. 629 (1982), which discusses the term "appeals procedure," as described in Section 19(d), E.O. 11491.[6] That decision holds that that term does not encompass appeals procedures which do not provide for third party review of an agency action. *Veterans Administration, Regional Office, Denver and AFGE Local 1557*, 7 F.L.R.A. 629 (1982). Plaintiffs also cite *Dept. of Air Force, McGuire Air Force Base and Local 1778, American Federation of Government Employees*, 3 F.L.R.A. 253 (1980), as holding that grievance procedures could not encompass, and the arbitrator could not entertain, FLSA claims.

Based upon this logic, plaintiffs allege that by law [7] FLSA disputes can be pursued either through statutory appeal procedures to OPM, or through a suit in a Federal or State court of competent jurisdiction. Therefore, plaintiffs contend that these pre-September 15, 1981 claims are cognizable in this court.

Further, plaintiffs argue that by virtue of its savings provision, 5 U.S.C. § 7135,

the CSRA did not repeal or automatically expand the scope of pre-existing grievance procedures.

Plaintiffs cite as authority, *Interpretation and Guidance*, 2 F.L.R.A. 274 (1979), an interpretation and guidance of 5 U.S.C. § 7135 as it relates to Section 13, E.O. 11491:

> As set forth previously, § 7135(a)(1) of the Statute [CSRA] provides that nothing in the Statute shall preclude the renewal or continuation of a lawful agreement entered into before the effective date of the Statute. Plainly, where both parties to an existing agreement containing grievance procedures negotiated under Section 13 of the Order [E.O. 11491] wish to maintain those negotiated grievance procedures, the literal language of § 7135(a)(1) of the Statute does not prevent the parties from renewing or continuing the terms of that agreement if they so desire.
>
> However, where either party objects to the continuation of provisions in that agreement establishing the scope of the negotiated grievance procedures, such objection requires the parties to comply with the mandate of § 7121 of the Statute. That is the parties would then be required to renegotiate the scope of their negotiated grievance procedures....
>
> *Pending such renegotiation, the current agreement would of course continue in effect and grievances would continue to be processed by the parties as provided for in that agreement.*
>
> (Emphasis added.)

Plaintiffs contend that since there was no objection by either party to continuation of the June 1978 agreement and no renego-

5. At the time FPM–L 551–9 was issued, 29 U.S.C. § 216 spoke of action being brought in a U.S. district court. However, in 1977 29 U.S.C. § 216 was revised to incorporate any Federal or State court of competent jurisdiction.

6. Section 19—Unfair labor practices.—
   (d) Issues which can properly be raised under an appeals procedure may not be raised under this section. Issues which can be raised under a grievance procedure may, in the discretion of the aggrieved party, be raised under

that procedure or the complaint procedures under this section, but not under both procedures. Appeals or grievance decisions shall not be construed as unfair labor practice decisions under this Order nor as precedent for such decisions. All complaints under this section that cannot be resolved by the parties shall be filed with the Assistant Secretary.

7. Meaning the combined effect of E.O. 11491, FPM–L 551–9, 29 U.S.C. § 216, as amended, and the decisions cited above.

tiations took place regarding its grievance procedures, then it must be presumed that the parties intended that those procedures be continued in effect under Section 13, E.O. 11491 through September 14, 1981. Plaintiffs argue that due to the savings provision, 5 U.S.C. § 7135, they continued to have the right under the automatically extended contract to pursue statutory appeal procedures which encompassed the right to sue directly in this court.

Plaintiffs also allege that there was no suggestion in *Carter* that the CSRA savings provision was ineffective. Additionally, plaintiffs argue that the holding in *Carter* requires that the parties to an agreement in effect when the CSRA was enacted actually make a conscious choice to *include* in their negotiated grievance procedures those disputes which were then excluded. They argue that here the parties did not choose to exercise their right to renegotiate their original agreement and, therefore, they did not choose to modify the grievance procedures in that agreement to include FLSA claims under those procedures. In sum, they contend that under a proper interpretation of applicable law including E.O. 11491 and the CSRA savings provision, 5 U.S.C. § 7135, their FLSA claims continued to be excluded from coverage under the grievance procedures in the automatically extended agreement.

Finally, in their response to defendant's motion, plaintiffs have asked the court to remand the post-September 14, 1981 claims, over which this court has no jurisdiction, to OPM under RUSCC 60.1. Defendant, in its reply, argues that since the court is without jurisdiction over these claims, the court has the power only to strike them from its docket. Therefore, defendant contends plaintiffs' request for a remand must be denied as a matter of law. *Johns–Manville Corp. v. United States*, 893 F.2d 324 (Fed.Cir.1989). *See also, Haber v. United States*, 17 Cl.Ct. 496 (1989), *aff'd* 904 F.2d 45 (Fed.Cir.1990).

## DISCUSSION

For the purposes of a motion to dismiss for lack of subject matter jurisdiction pursuant to RUSCC 12(b)(1), the court must accept as true any undisputed allegations of fact made by plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Where there are disputed facts relevant to the issue of jurisdiction, the court is required to decide those facts. In this matter, there are no disputed facts which require a resolution in order to decide the merits of defendant's motion.[8] *Reynolds v. Army & Air Force Exchange Service*, 846 F.2d 746, 747 (Fed. Cir.1988); *Hedman v. United States*, 15 Cl.Ct. 304, 306 (1988). The burden is on plaintiff to establish jurisdiction. *Metzger, Shadyac & Schwartz v. United States*, 10 Cl.Ct. 107, 109 (1986).

█ It is not disputed by the parties that this court has no jurisdiction over claims which accrued under the September 1981 and subsequent agreements for those plaintiffs who are still subject to the AFGE unit's grievance procedures. Thus, the first issue to be addressed is whether the court must dismiss those claims accruing under the September 1981 or later agreements for plaintiffs who do *not* have access to the AFGE unit's grievance procedures. This same issue was addressed in *Beall v. United States*, 22 Cl.Ct. 59 (1990). In *Beall*, two plaintiffs were no longer members of the unit under which their claims arose. The court in *Beall* concluded that while under 5 U.S.C. § 7121(a)(1), grievance procedures are the exclusive procedures for resolving nonexempted grievances, defendant had failed to establish that that remedy was presently available for these plaintiffs. Therefore, the court in *Beall* determined that it did not have sufficient evidence to conclude that adequate grounds existed to dismiss those plaintiffs' claims. *Beall* is still pending. A ruling on the merits of this issue has not been made.

---

**8.** As noted in this opinion, the court has determined to defer its ruling on the post-September 14, 1981 claims for some plaintiffs until it has sufficient information to make a more informed ruling. Therefore, it is not yet known whether there are any disputed facts related to these plaintiffs' claims.

A similar situation *may* exist for some of the plaintiffs in this proceeding. Plaintiffs have alleged that at least one plaintiff is deceased, with his estate substituted as a party, and other plaintiffs have retired or have ceased their employment with the BOP. Plaintiffs argue that those plaintiffs in this proceeding who are similarly situated to those in *Beall* and who do not have access to the AFGE unit's grievance procedures, under the *Beall* analysis, should not have their claims dismissed at this time. The court agrees. Therefore, this court concludes that it has insufficient information concerning these plaintiffs to rule upon defendant's motion to dismiss. Thus, the court will defer its ruling respecting dismissal of these plaintiffs' claims pending the receipt of additional evidence respecting the availability of grievance procedures for processing of their claims. After the submission of such evidence as may be directed by the court, the court will rule upon defendant's motion as to these plaintiffs in a subsequent order.[9] All remaining claims which accrued under the September 1981 or later agreements, for plaintiffs who have access to the AFGE unit's grievance procedures, as of the date of this opinion, will be ordered dismissed.

A second issue is whether this court has jurisdiction over those complaints which arose under the June 1978 agreement. It is not clear from this court's review of the Federal Circuit's decision in *Carter* whether that decision dealt with employees who were covered by an agreement enacted prior to the CSRA.[10] The absence of discussion on this point in *Carter* suggests, however, that the plaintiffs in that case were covered by an agreement entered into *subsequent* to the CSRA and, therefore, had available to them grievance procedures.

9. The court has issued an order requiring the parties to file pleadings identifying those plaintiffs, if any, who are no longer members of the AFGE unit and to address whether there are any additional grounds for dismissing these plaintiffs' claims.

10. Plaintiffs' claims in *Carter* all arose no earlier than 1981.

11. 5 U.S.C. § 7135(b):

The *Carter* decision made no mention of the CSRA savings provision. 5 U.S.C. § 7135. On its face, this provision clearly permits the continuation of a "lawful agreement between an agency and an exclusive representative of its employees, *which is entered into before the effective date of this chapter* ...." (Emphasis added.) 5 U.S.C. § 7135(a)(1). The court, however, under 5 U.S.C. § 7135(b), must consider whether 5 U.S.C. § 7121 superseded the procedures at issue under Section 13, E.O. 11491; and whether this modified, in turn, the grievance procedures under plaintiffs' June 1978 agreement.[11]

This issue was discussed at great length in *Interpretation and Guidance*, 2 F.L.R.A. 274 (1979), cited earlier in this opinion. In that decision, the Federal Labor Relations Authority (FLRA) determined that 5 U.S.C. § 7121 did in fact supersede Section 13, E.O. 11491. However, before 5 U.S.C. § 7121 brought about such a supersedence for an agreement which preceded the CSRA, one or more of the parties must have formally objected to the continuation of the grievance procedures set forth under such a prior agreement. At that point, the parties would be required to renegotiate to establish new grievance procedures. Until these renegotiations were completed, existing more limited grievance procedures and rights to existing statutory appeal procedures remained in effect.

With regard to the weight accorded FLRA decisions by this court, the Supreme Court has determined that FLRA decisions are entitled to considerable deference.

[T]he FLRA was intended to develop specialized expertise in its field of labor relations and to use that expertise to give content to the principles and goals set forth in the Act [CSRA]. ... Conse-

Policies, regulations and procedures established under and decisions issued under Executive Orders 11491, 11616, 11636, 11787, and 11838, or under any other Executive Order, as in effect on the effective date of this chapter, shall remain in full force and effect until revised or revoked by the President, or unless superseded by specific provisions of this chapter or by regulations or decisions issued pursuant to this chapter.

quently, the Authority is entitled to considerable deference when it exercises its "special function of applying the general provisions of the Act to the complexities" of federal labor relations.

*Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983). However, the Supreme Court also cautioned against blindly adopting administrative decisions.

[W]hile reviewing courts should uphold reasonable and defensible constructions of an agency's enabling Act ... they must not rubber-stamp ... administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute.

*Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983). *See also, NLRB v. International Asso. of Bridge, etc.,* 434 U.S. 335, 350, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978); *NLRB v. Brown,* 380 U.S. 278, 291–92, 85 S.Ct. 980, 988–89, 13 L.Ed.2d 839 (1965).

The court's interpretation of the FLRA decisions discussed here is not inconsistent with any statutory mandate nor does it frustrate congressional policy. Careful analysis shows that such an interpretation is entirely reasonable and harmonizes the plain language of both the CSRA's savings provision, 5 U.S.C. § 7135, and grievance procedures, 5 U.S.C. § 7121. Moreover, this interpretation would permit those parties who were under an agreement which preceded the CSRA to continue under their existing negotiated grievance procedures. It also would, quite reasonably, allow either party to unilaterally rescind these procedures by requiring all parties, after notice, to negotiate new procedures in accordance with the CSRA. In short, this interpretation would permit the parties to continue to decide for themselves how their grievances will be handled, a result which is entirely consistent with the express provisions of the CSRA. Finally, it would appear to be unreasonable to preclude any choice respecting exclusion of grievance

procedures pursuant to 5 U.S.C. § 7121, for those parties under a pre-CSRA agreement who have not elected to amend their grievance procedures.

This "choice" issue was discussed in *Carter.* Appellants in *Carter* argued that "[T]he CSRA cannot be construed as having done implicitly what it did not do explicitly: repeal the judicial access afforded by section 16 of the Fair Labor Standards Act, 29 U.S.C. § 216." *Carter v. Gibbs,* 909 F.2d 1452, 1455 (Fed.Cir.1990). The court responded by asserting that:

Now, as before the CSRA, federal employees are entitled to recover overtime compensation from the government "in any Federal or State court of competent jurisdiction." ... That is, while "the collective bargaining mechanisms created by Title VII (5 U.S.C. § 7101–7904) do not deprive employees of recourse to any of the remedies otherwise provided by statute or regulation," *Karahalios v. National Fed'n of Fed. Employees, Local 1263,* 489 U.S. 527, [536], 109 S.Ct. 1282, 1288 [103 L.Ed.2d 539] (1989), the agreement they negotiate with the government may. *See Harris v. United States,* 841 F.2d 1097, 1099 (Fed.Cir. 1988) (where collectively bargained procedures preclude access to the Claims Court, "the issue is not whether anyone's judicial review is foreclosed, but only whether a claimant must pursue one route or another"). Here the union and the IRS committed overtime grievances to the exclusive province of the negotiated procedures.

*Carter v. Gibbs,* 909 F.2d 1452, 1455 (Fed.Cir.1990).

What the court seems to emphasize in *Carter* is that the CSRA did not repeal the judicial access afforded by the FLSA. Plaintiffs in *Carter* prior to their agreement had the choice to pursue grievances through negotiated grievance procedures, judicial review, or other means. It was their agreement itself, and not the CSRA, which precluded methods of review other than through their agreement's grievance procedures.

If the court were to adopt defendant's position on this issue, it would, in essence, preclude those plaintiffs with claims accruing under the June 1978 agreement from having such a procedural choice. When such plaintiffs' June 1978 agreement was negotiated it was subject to Section 13, E.O. 11491. Assuming that those plaintiffs' FLSA claims were subject to a right of statutory appeal,[12] by law, plaintiffs were prohibited from pursuing such claims through the June 1978 agreement's grievance procedures. It was not necessary to specifically exclude FLSA compensation claims from these grievance procedures. By not reopening negotiations post-CSRA, the parties effectively chose not to alter their then applicable grievance and statutory appeal procedures. Thus, by their nonaction they evidenced their desire, subsequent to passage of the CSRA, to maintain the same right of judicial redress of their claims which they had prior to passage of the CSRA. Basically, no rights were changed by the CSRA. Under defendant's interpretation of *Carter*, plaintiffs would be required, without the parties to the June 1978 extended agreement having negotiated new procedures, to now pursue their FLSA claims in strict accord with the CSRA. This would effectively deny them their right of judicial access and their access to other statutory appeal procedures

previously afforded by the FLSA, a result the court finds to be beyond the holding in *Carter* and without merit.

■ Therefore, for the reasons set forth above, the court concludes that under the CSRA savings provision, 5 U.S.C. § 7135, plaintiffs' grievance procedures and statutory appeal rights granted by the June 1978 agreement, which rights included the right to judicial redress of their claims in competent Federal courts, including this court, remained effective through September 14, 1981 for plaintiffs covered by that agreement.[13]

■ As noted above, a second jurisdictional issue the court must consider is whether under Section 13, E.O. 11491, plaintiffs' pre-September 15, 1981 FLSA claims are subject to "statutory appeal procedures" or to the grievance procedures in their June 1978 agreement. Again, there is a FLSA decision directly on point. In *Dept. of Air Force, McGuire Air Force Base and Local 1778, American Federation of Government Employees*, 3 F.L.R.A. 253, 255 (1980), the appellate board held that for a grievance which arose before the arbitrator under E.O. 11491: "[T]he arbitrator correctly noted that Fair Labor Standards Act questions are subject to statutory appeal procedures...."[14]

**12.** This issue will be discussed later in this opinion.

**13.** In its brief, defendant cites *Adams v. United States*, 20 Cl.Ct. 542 (1990), issued subsequent to *Carter*, which it believes supports its motion to dismiss. The court reviewed that case, as well as three other related cases issued subsequent to the *Carter* decision, which are discussed below.

*Adams v. United States*, 20 Cl.Ct. 542 (1990), cited by defendant, and *Moore v. United States*, 21 Cl.Ct. 537 (1990), both concerned claims which accrued under *agreements executed* subsequent to the CSRA. *Riggs v. United States*, 21 Cl.Ct. 664 (1990), and *Ackerman v. United States*, 21 Cl.Ct. 484 (1990), concerned *claims which accrued* subsequent to the CSRA. Unfortunately, it is not clear whether the agreements involved in *Riggs* and *Ackerman* were executed prior or subsequent to the CSRA. However, as neither of these decisions included a discussion of the CSRA's savings provision, 5 U.S.C. § 7135, the court will not assume that any of these agreements were executed prior to the CSRA, or that they had grievance and statutory

appeal procedures similar to those contained in plaintiffs' June 1978 agreement. Therefore, the court concludes that none of these decisions clearly support defendant's motion to dismiss plaintiffs' claims accruing under their June 1978 agreement.

Additionally, there was no discussion in any of the above decisions concerning the rights of those plaintiffs, if any, who for whatever reason were no longer members of the particular unit under which their respective claims arose. Therefore, the court concludes that these decisions do not support defendant's motion to dismiss any of such plaintiffs' post-September 14, 1981 claims.

**14.** While this decision was rendered respecting claims arising prior to the CSRA, it is still relevant because it identifies the status of FLSA claims under Section 13, E.O. 11491. As discussed previously in this opinion, in the instant case neither party opted to amend the grievance or statutory appeal procedures of the June 1978 agreement. Thus, those procedures which were subject to Section 13, E.O. 11491, remained in

Lending support to this position is *Veterans Administration, Regional Office, Denver and AFGE Local 1557*, 7 F.L.R.A. 629 (1982). That decision discussed the term "appeals procedure" in Section 19, E.O. 11491, and held that that term was not intended to encompass those procedures which do not provide for third party review. Finally, FPM–L 551–9 clearly sets forth the statutory appeal procedures for FLSA compensation claims.

The court concludes that based upon the FLRA decisions cited above, FPM–L 551–9, and 29 U.S.C. § 216, FLSA compensation claims have a right of statutory appeal to OPM (or previously, to the CSC). Plaintiffs' pre-September 15, 1981 FLSA compensation claims were subject to "statutory appeal procedures" as defined under E.O.

11491, and this court has jurisdiction to entertain such claims.[15]

■ Finally, plaintiffs have requested that the post-September 14, 1981 claims, over which it is agreed that this court does not have jurisdiction, be remanded to OPM pursuant to RUSCC 60.1. However, under RUSCC 60.1, the court must first have jurisdiction over these claims before it can remand them to an administrative or executive body. Therefore, the court is unable to remand any claims to OPM over which it does not have jurisdiction under RUSCC 60.1, but must dismiss them without prejudice.

■ Additionally, the court has reviewed *sua sponte* whether these claims can be transferred to OPM pursuant to 28 U.S.C. § 1631.[16] Under 28 U.S.C. § 1631, three

---

effect until that agreement expired or was superseded by the September 15, 1981 agreement.

15. In a supplemental brief, defendant argues that language similar to that in plaintiffs' June 1978 agreement, which excludes matters which were subject to statutory appeal procedures from its grievance procedures under E.O. 11491, was construed in *Beall v. United States*, 22 Cl.Ct. 59 (1990), which was discussed briefly above. Defendant alleges that *Beall* held that the Claims Court is not a statutory appeal system nor is one created in the Claims Court when the *Tucker Act*, 28 U.S.C. § 1491(a)(1), is read in conjunction with the generalized jurisdictional provision of the FLSA, 29 U.S.C. § 216. Admittedly, in general, the Claims Court is not a statutory appeal *system*, but that contention does not address plaintiffs' argument. Rather, plaintiffs allege, and this court agrees, that under their June 1978 agreement, plaintiffs had a right to a statutory appeal *procedure* to the CSC for FLSA complaints. This procedure, as reported in FPM–L 551–9, also allowed plaintiffs to pursue FLSA violations directly in any Federal or State court of competent jurisdiction under 29 U.S.C. § 216.

In *Beall,* the interpretation of the phrase "statutory appeal procedures," and the review of 29 U.S.C. § 216 with regard to FLSA disputes, was considered for an agreement entered into *subsequent* to the passage of the CSRA. Under the CSRA there is a strong presumption that all grievances are subject to an agreement's grievance procedures unless specifically excluded. While 29 U.S.C. § 216 gives employees the right to pursue FLSA claims through a Federal or State court, employees give up that right when they enter a post-CSRA agreement which does not specifically exclude FLSA disputes from their grievance procedures. *Carter v. Gibbs*, 909 F.2d 1452 (Fed.Cir.1990). In *Beall,* plaintiffs'

agreement did not specifically exclude FLSA disputes from their grievance procedures. To have allowed plaintiffs in *Beall* to rely on language in their contract exempting any issue where there exists "statutory appeal procedures" would have been to effectively defeat the intent of Congress to provide "an integrated scheme of administrative and judicial review." *See Carter v. Gibbs,* 909 F.2d 1452, 1456 (Fed.Cir.1990) (quoting *United States v. Fausto*, 484 U.S. 439, 445, 108 S.Ct. 668, 672, 98 L.Ed.2d 830 (1988)).

In contrast, there is no presumption in a pre-CSRA agreement that all matters are grievable unless specifically excluded. In the instant case, according to the FLRA decisions cited above, plaintiffs *could not* pursue FLSA disputes through their agreement's grievance procedures. Ignoring the CSRA savings provision, 5 U.S.C. § 7135, and forcing plaintiffs to adhere to a post-CSRA interpretation of whether grievances subject to statutory appeal procedures are exempted from an agreement's grievance procedures, would completely disregard prior FLRA case law and would divest plaintiffs of their right under *Carter,* FPM–L 551–9, and 29 U.S.C. § 216, to choose, after negotiation, the manner in which their claims are to be handled. Consequently, this court concludes that under a pre-CSRA agreement governed by E.O. 11491, the exemption from grievance procedures for disputes subject to a statutory appeal procedure does include FLSA disputes. Additionally, under 29 U.S.C. § 216, employees subject to a pre-CSRA agreement had and continue to have the right to pursue their FLSA claims directly in this court.

16. 28 U.S.C. § 1631—Transfer to cure want of jurisdiction.—

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal,

requirements must be met: (1) this court must lack jurisdiction itself; (2) it must be in the interest of justice to transfer the claims; and (3) the transferee court must be one in which the action could have been brought at the time the claims were filed. *North Bonneville v. United States Dist. Court,* 732 F.2d 747 (9th Cir.1984); *Lewis v. Hogwood,* 300 F.2d 697 (D.C.Cir.1962). In the instant case the first requirement is met, since the court has found that it does not have jurisdiction over all post-September 14, 1981 claims. The court also believes, as affected plaintiffs' contend, that it would be in the interest of justice to allow such plaintiffs to pursue their claims in another forum which, presumably, would adopt this court's filing date, permitting them to avoid a statute of limitations difficulty. Unfortunately, the third requirement presents not just a difficulty but an insurmountable hurdle to a transfer by this court. That requirement refers to transferring the claim to a transferee *"court."* Clearly, 28 U.S.C. § 1631 applies to civil actions filed in a court as defined in § 610 of that title, which are then transferred "to any other *such court* in which the action or appeal could have been brought...." (Emphasis added.) 28 U.S.C. § 1631. The definition of "courts" in 28 U.S.C. § 610 does not include administrative bodies such as OPM.[17] Therefore, this court is precluded from transferring plaintiffs' post-September 15, 1981 claims to OPM under 28 U.S.C. § 1631.

### CONCLUSION

For the reasons expressed above, the court grants defendant's motion to dismiss the post-September 14, 1981 claims of plaintiffs who, as of the date of this opinion, have access to the AFGE unit's grievance procedures; denies plaintiffs' motion to

transfer to OPM such claims; and defers its ruling on defendant's motion to dismiss with respect to those plaintiffs who do not have access to these procedures. After identification and determination of the status of these plaintiffs, if any, in further proceedings, the court will rule upon defendant's motion to dismiss as to these plaintiffs. With respect to those plaintiffs' claims accruing from November 13, 1979 through September 14, 1981, under the June 1978 agreement the court denies defendant's motion to dismiss. Further proceedings in this matter will be scheduled by a subsequent order.

IT IS SO ORDERED.

---

including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or

noticed for the court from which it is transferred.

17. 28 U.S.C. § 610—Courts defined.—

As used in this chapter the word "courts" includes the courts of appeals and district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, the United States Claims Court, and the Court of International Trade.