**James A. ALBRIGHT, Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

**No. 93–5032.**

United States Court of Appeals, Federal Circuit.

Nov. 16, 1993.

Alan Banov, Attorney, Washington, DC, submitted for plaintiff-appellant.

Robert J. Krask, Attorney, U.S. Dept. of Justice, Washington, DC, submitted for defendant-appellee. With him on the brief were Stuart E. Schiffer and David M. Cohen.

Before LOURIE, Circuit Judge, SKELTON, Senior Circuit Judge, and RADER, Circuit Judge.

LOURIE, Circuit Judge.

James A. Albright appeals from the judgment of the United States Court of Federal Claims [1] dismissing his back pay claims for lack of subject matter jurisdiction, *Albright v. United States*, 26 Cl.Ct. 1119 (1992). Because resolution of Albright's back pay claims may be obtained only through the grievance procedures provided for in the governing collective bargaining agreement, we affirm.

## BACKGROUND

During the time period relevant to this case, Albright, a Bureau of Prisons employee, belonged to a collective bargaining unit represented by the American Federation of Government Employees (AFGE) and was covered by a collective bargaining agreement between the AFGE and the Bureau of Prisons. The relevant agreement was in effect from June 1, 1978 to September 15, 1981,[2] and it provided that disputes between the Bureau of Prisons and members of the collective bargaining unit be exclusively considered and resolved under the grievance procedures set forth in the agreement. The agreement allowed for grievance of wage claims by arbitration, and it specifically excluded "matters subject to statutory appeal procedures and matters excluded from mandatory negotiations by Executive Order 11491." Executive Order 11491 provided that a collective bar-

---

1. Pursuant to Title IX of the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506, the United States Claims Court was renamed the United States Court of Federal Claims effective October 29, 1992.

2. Initially, the agreement was to terminate on November 30, 1979, but it was extended by the parties.

gaining agreement may not cover matters for which a statutory appeal procedure exists.[3]

On January 11, 1979, while the agreement was in effect, the Civil Service Reform Act of 1978 ("CSRA" or "Act"), Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.), became effective. *See* 5 C.F.R. § 1201.191(a)(2) (1993). The CSRA contains a provision requiring any collective bargaining agreement between federal employees and management to provide procedures for the settlement of grievances. 5 U.S.C. § 7121(a)(1) (1988).[4] Moreover, it mandates that, in the absence of a specific exclusion, such grievance procedures shall be the exclusive procedures for resolving grievances which fall within the agreement's coverage. 5 U.S.C. § 7121(a)(1) (1988). Our precedent establishes that any such exclusion must be explicit and unambiguous. *Muniz v. United States*, 972 F.2d 1304 (Fed.Cir.1992); *Carter v. Gibbs*, 909 F.2d 1452, 1458 (Fed. Cir.) (in banc), *cert. denied*, 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990).

Albright claimed overtime pay under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219 (1988), and overtime, night differential, Sunday premium, and holiday pay under the Federal Employees Pay Act (FEPA), 5 U.S.C. §§ 5542, 5544, 5546 (1988). Rather than avail himself of the grievance procedures set forth in the agreement, Albright sought judicial resolution of his back pay claims at the Court of Federal Claims.[5] Although his claims accrued before the effective date of the CSRA, Albright did not assert them until after the Act took effect. Albright argued that because his claims accrued before the effective date of the CSRA and because he was subject to a collective bargaining agreement entered into before the CSRA came into effect, he was not precluded from use of judicial remedies that were available to him before the passage of the CSRA, but which were unavailable after the passage of the CSRA.

At trial, Albright relied upon *Amos v. United States*, 22 Cl.Ct. 724 (1991), in which the Court of Federal Claims held that a collective bargaining agreement entered into before the passage of the CSRA controlled until it was changed by the parties. In so concluding, the *Amos* court stated that its holding was "not inconsistent with any statutory mandate nor [did] it frustrate congressional policy" for the court to entertain FLSA claims after the enactment of the CSRA, which claims accrued both before and after the enactment of the CSRA under a pre-CSRA agreement. *Amos*, 22 Cl.Ct. at 731–32.

The trial court declined to follow the *Amos* decision, finding it contrary to congressional policy underlying the CSRA, and held that the CSRA made the grievance procedures in the collective bargaining agreement the exclusive method of redress for claims brought after its enactment, even if those claims arose before its enactment. The court reasoned that because Congress did not specifically exempt inchoate claims from the comprehensive provisions of the CSRA, but did

---

**3.** Section 13 of Executive Order 11,491 provided that:

> (a) An agreement between an agency and a labor organization shall provide a procedure, applicable only to the unit, for the consideration of grievances. The coverage and scope of the procedures shall be negotiated by the parties to the agreement with the exception that it may not cover matters for which a statutory appeal procedure exists.

Exec. Order No. 11,491, 3 C.F.R. § 861 (1966–1977), *reprinted as amended in* 5 U.S.C. § 7101 note (1988).

**4.** 5 U.S.C. § 7121 sets forth the grievance procedures governing labor-management relations in the federal service as follows:

> (a)(1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d) and (e) of this section, the procedures shall be the exclusive procedures for resolving grievances which fall within its coverage.
>
> (2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

**5.** Albright and numerous other plaintiffs initially brought suit on August 8, 1983 in the United States District Court for the District of Columbia. After concluding that it lacked jurisdiction to hear the suit, the district court transferred the case to the Court of Federal Claims on May 7, 1984. The case was subsequently consolidated with three similar cases, which are not now before us.

specifically exempt pending claims in the Act's Savings Provision, *see* 5 U.S.C. § 1101 note (1988), Congress intended inchoate claims to be subject to the CSRA. Thus, the court found that, upon enactment of the CSRA, the grievance procedures in the collective bargaining agreement became the sole avenue of redress for Albright's back pay claims, since they were not already pending within the meaning of the Act's Savings Provision and they were not specifically excluded from the agreement. Accordingly, the court dismissed Albright's claims for lack of jurisdiction.

## DISCUSSION

■ The issue presented to this court is whether the trial court erred when it determined that it lacked jurisdiction to entertain Albright's claims. Whether or not a trial court possesses jurisdiction is a question of law, which we review *de novo. Muniz,* 972 F.2d at 1309 (citation omitted).

■ Albright argues that the CSRA does not apply retroactively to claims accruing before its enactment. Thus, we first must determine whether or not Congress intended the CSRA to apply to such claims. To determine this, we look to the CSRA itself.

Congress addressed the specific issue of retroactivity in a note to 5 U.S.C. § 1101, labelled the "Savings Provision," which reads:

> (b) No provision of this Act ... shall affect any *administrative proceedings pending at the time such provision takes effect.* Orders shall be issued in such proceedings and appeals shall be taken therefrom as if this Act had not been enacted.

Pub.L. No. 95-454, § 902(b), 92 Stat. 1224 (codified at 5 U.S.C. § 1101 note (1988)) (emphasis added). The Savings Provision thus prevents application of the CSRA to administrative proceedings pending on the effective date of the provision in issue. By its express language, the Savings Provision only excludes application of the CSRA from proceedings pending on the date of enactment, and it does not expressly require all matters not yet administratively pending to be subject to the Act's provisions. However, we conclude that the application of the CSRA to all claims not administratively pending is required in order to be consistent with an objective of the Act, which is to favor grievance and arbitration procedures. Moreover, by inference, that which is not excluded by the Savings Provision is included within the Act. *See United States v. Wells Fargo Bank,* 485 U.S. 351, 357, 108 S.Ct. 1179, 1183, 99 L.Ed.2d 368 (1988) *(expressio unius est exclusio alterius ).* We know of no indication of Congress's intent to exclude from the CSRA and thereby preserve judicial recourse for claims accruing, but not administratively pending, before the passage of the Act. We conclude that the Savings Provision is key to determining which matters are governed by the CSRA and which are not. As for the *Amos* court's holding, the court failed to consider and evaluate the effect of the Savings Provision in its analysis. Consequently, the *Amos* court's holding is not persuasive.

■ Albright also argues that retroactive application of the CSRA would violate his Due Process rights. We disagree. Retroactive application of section 7121 does not disadvantageously affect the past relationship or transactions of Albright and the Bureau of Prisons, nor does it substantially effect the rights or obligations of either party under the agreement. Arbitration of the claims at issue here was not unexpected by Albright, since the agreement contained an exclusive grievance procedure clause. Notably, the parties here even agreed to extend the existing agreement past its original termination date of November 30, 1979, just after the enactment of the CSRA, without changing its grievance procedure provisions. The parties could have, but chose not to, alter the agreement until 1981,[6] when they negotiated an even more broadly written grievance and arbitration procedure that allowed grievances to be submitted on any matters that would be properly grievable under section 7121.

---

**6.** Albright therefore cannot argue that the lower court's ruling "serves to retract causes of action which predated the CSRA." *See Carter,* 909 F.2d at 1455 (the mechanisms created by the CSRA do not deprive employees of recourse to any remedies).

By complying with congressionally prescribed procedures for obtaining relief, Albright will not be left without a remedy or means of resolving his claims. *Bush v. Lucas,* 462 U.S. 367, 368, 103 S.Ct. 2404, 2406, 76 L.Ed.2d 648 (1983) (the CSRA's comprehensive scheme governing employment relationships gives meaningful remedies against the United States). The CSRA simply mandates that certain of the parties' rights be pursued in an administrative, rather than the judicial, arena. *See id.* "[W]here a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies." *Karahalios v. National Fed'n of Fed. Employees,* 489 U.S. 527, 533, 109 S.Ct. 1282, 1286–87, 103 L.Ed.2d 539 (1989). In enacting the CSRA, Congress unambiguously and unmistakably elected the remedy of exclusive arbitration. *See Muniz,* 972 F.2d at 1309.

■■■ Furthermore, "legislative Acts adjusting the burdens and benefits of economic life come to [a c]ourt with a presumption of constitutionality, and the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Pension Ben. Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 729, 104 S.Ct. 2709, 2717, 81 L.Ed.2d 601 (1984) (citations omitted). "[T]he strong deference accorded legislation in the field of national economic policy is no less applicable when that legislation is applied retroactively." *Id.* If the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments concerning the wisdom of such legislation remain within the province of the legislative branch. *See id.* Retroactive operation of the CSRA clearly furthers Congress's intent of narrowing the role of the judiciary and elevating the role of the arbitrator in resolving federal employee labor-management disputes. *See id.* at 1456. We therefore conclude that no Due Process violation will result from the application of the Act to Albright's claims.

Having determined that the CSRA does apply retroactively to Albright's back pay claims and that to do so will not violate his Due Process rights, we next examine the CSRA's effect on the agreement at issue. Albright asserts that section 7135 of the CSRA preserves judicial review of his claims. He reasons that the CSRA "maintain[s] the vitality of collective-bargaining agreements and executive orders in effect when the CSRA became effective," and the "maintenance of the policies and procedures of Executive Order 11491" includes access to courts for remedying back pay disputes.

Section 7135 of the CSRA describes the statute's effect on existing agreements, policies, regulations and procedures. It provides, in pertinent part:

(a) Nothing contained in this chapter shall preclude—

(1) the renewal or continuation of an exclusive recognition, certification of an exclusive representative, or a lawful agreement between an agency and an exclusive representative of its employees, which is entered into before the effective date of this chapter; or

. . . .

(b) Policies, regulations, and procedures established under and decisions issued under Executive Orders 11491, 11616, 11636, 11787 and 11838, or under any other Executive Order, as in effect on the effective date of this chapter, shall remain in full force and effect until revised or revoked by the President, or unless superseded by specific provisions of this chapter or by regulations or decisions issued pursuant to this chapter.

5 U.S.C. § 7135 (1988).

In accordance with this section, the rights of labor and management do continue to be governed by lawful agreements, as long as their negotiated grievance procedures do not conflict with a statute. *See* 5 U.S.C. § 7135(a)(1) (1988). Albright is correct that the 1978 agreement continued to govern the disposition of grievances between labor and management until its termination on September 15, 1981. However, alternative avenues of relief that were at one time available to labor and management were no longer available after the CSRA's enactment. The procedures for obtaining a remedy under the CSRA were carefully prescribed by its griev-

ance procedure provision, 5 U.S.C. § 7121. To the extent that other procedures are inconsistent with section 7121, they were statutorily superseded. *See* 5 U.S.C. § 7135(b) (1988).

Here, the parties do not dispute that Albright's back pay claims are "grievable" matters. *See* 5 U.S.C. § 7103(a)(9) (1988). However, Albright contends that the claims were specifically excluded by Article 29 of the agreement itself. We disagree.

Article 29 provided:

ARTICLE 29—GRIEVANCE PROCEDURE

*Section a.* The purpose of this Article is to provide the exclusive procedure for the consideration and resolution of grievances involving any dispute between the Employer and the Union or an employee or employees covered by this Agreement, which may pertain to any matter involving the interpretation or application of (1) this Agreement or (2) published Federal Prison System policies and regulations which concern (a) personnel policies and practices and (b) matters affecting working conditions, whether or not specifically covered by this Agreement. *Matters subject to statutory appeal procedures and matters excluded from mandatory negotiations by Executive Order 11491, as amended, are not subject to this grievance procedure* except to the extent covered by this Agreement.

(emphasis added).

■ Interpretation of the terms of an agreement is an issue of law, subject to our *de novo* review on appeal. *Muniz*, 972 F.2d at 1309. Under the agreement, only matters subject to statutory appeal procedures and matters excluded from mandatory negotiations by Executive Order 11491 were not subject to the grievance-arbitration procedures. To bring his claims within the meaning of Article 29a's exception, Albright cites a Federal Personnel Manual System Letter (FPM–L 551–9), issued by the Civil Service Commission (CSC), the predecessor to OPM,

on March 30, 1976. This letter sets forth the right of an employee alleging a FLSA violation to file a complaint directly with the CSC or to bring an action in a U.S. district court. Using FPM–L 551–9 as support, Albright asserts that his back pay claims are subject to "statutory appeal procedures" and therefore excluded from the agreement's coverage.

Contrary to Albright's assertion, there is no "statutory appeal procedure" that excepts his claims from the grievance procedures mandated by the agreement. First, the jurisdiction vested in the Court of Federal Claims by the Tucker Act, 28 U.S.C. § 1491(a)(1) (1988), does not create a "statutory appeal procedure" within the meaning of this agreement. It is a general grant of jurisdiction for cases meeting its conditions, in contrast to specific appellate procedures carefully delineated by statute, such as those with respect to cases before the Equal Employment Opportunity Commission,[7] the Merit Systems Protection Board,[8] and the Federal Labor Relations Authority.[9] *Accord Beall v. United States*, 22 Cl.Ct. 59, 61 (1990). *See also* S.Rep. No. 969, 95th Cong., 2d Sess. 109–10, *reprinted in* 1978 U.S.C.C.A.N. 2723, 2831–32 (describing "appeal from the withholding of within-grade salary increases and appeal from reduction-in-force actions" and "procedures under 5 U.S.C. § 7701" as "statutory appeal procedures"); *United States v. Fausto*, 484 U.S. 439, 444, 108 S.Ct. 668, 672, 98 L.Ed.2d 830 (1988) (before the CSRA, "employees sought to appeal the decisions of the CSC, or the agency decision unreviewed by the CSC, to the district courts through the various forms of action traditionally used for so-called *nonstatutory* review of agency action, including suits for mandamus.") (emphasis added). Albright's view would create a statutory exclusion for any dispute for which there might be general federal court jurisdiction. This would be at cross-purposes with the language of the CSRA, which requires a specific exclusion of claims from a negotiated grievance procedure.

---

**7.** 42 U.S.C. §§ 2000c to 2000e–17 (1988).

**8.** 5 U.S.C. §§ 1201–1209, 7121(d), 7121(e)(1), 7701 (1988).

**9.** 5 U.S.C. §§ 7104–05, 7118 (1988).

Nor did the FPM–L 551–9 letter establish a statutory appeal procedure; it merely set forth an administrative compliance and complaint system. It was not statutory at all. Finally, we can find no support, and Albright has offered none, for the proposition that a back pay claim to the General Accounting Office amounts to a statutory appeal procedure. Such an interpretation fails to overcome the presumption that grievance procedures are the exclusive method for resolving such grievances unless the parties specifically provide otherwise.

The issues raised by Albright are not subject to statutory appeal procedures within the meaning of the agreement. Since back pay claims are not excluded from the agreement, they are subject exclusively to the grievance procedure contained therein.

## CONCLUSION

The Court of Federal Claims' decision to dismiss the complaint for lack of subject matter jurisdiction is affirmed.

*AFFIRMED.*